John R. COPE, Appellant,

v.

Roland G. SCOTT; United States
of America, Appellees.

No. 92–5508.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 8, 1994.

Decided Jan. 20, 1995.

Marc Fiedler, Washington, DC, argued the cause for appellant. With him on the briefs were Roger C. Johnson and Lisa R. Riggs, Washington, DC.

Thomas S. Rees, Asst. U.S. Atty., Washington, DC, argued the cause for appellees. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC.

Before: WALD, GINSBURG, and TATEL, Circuit Judges.

Opinion of the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

In this negligence case, John R. Cope appeals a grant of summary judgment against him in favor of the government. The District Court concluded that the government's allegedly negligent actions were "discretionary functions" immune from suit under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2671–2680 (1988 & Supp. V 1993). With respect to Cope's allegations of negligent road maintenance, we affirm the District Court's decision. We find, however, that any discretion exercised by the government with respect to where and how to post signs warning of dangerous road conditions did not implicate "political, social, or economic" policy choices of the sort that Congress intended to protect from suits under the FTCA. We therefore affirm in part, reverse in part, and remand so that the case may proceed to trial on the allegations of improper warnings.

I.

Beach Drive, a two-way, two-lane road, is the main north-south route through Rock Creek Park, an urban park in Washington, D.C. that is maintained by the National Park Service. The road was "originally designed for pleasure driving," Joint Appendix ("J.A.") 35, as seems evident given what an engineering study described as its "poor alignment"— which we understand to refer to its many sharp curves. The Park Service alleges that the road is not "intended to provide fast and convenient transportation," but to "enhance visitor experience" in the park. Declaration of E. Macdougall Palmer, Assistant Chief of Maintenance, Rock Creek Park, J.A. 37. Commuters in Washington appear to believe otherwise, however, and the Park Service has allowed Beach Drive to become an important commuter route connecting downtown Washington with its northern suburbs. As a result, the road carries heavy traffic throughout the day. National Park Service road standards recommend that a road like Beach Drive carry a maximum of 8,000 vehicles daily, but recent estimates indicate that the average daily traffic on the stretch of road involved in this case was between two and three times that load.

On a rainy spring evening in 1987, Cope was driving north along Beach Drive. As a southbound vehicle driven by Roland Scott rounded a curve, it slid into the northbound lane and hit Cope's car. Cope alleges he suffered neck and back injuries. The Park Service officer who responded to the scene classified the pavement in his accident report as a "worn polished surface" that was "slick when wet." J.A. 89. Cope sued Scott and

the Park Service, alleging that the latter was negligent "in failing to appropriately and adequately maintain the roadway of Beach Drive ... and failing to place and maintain appropriate and adequate warning signs along the roadway." J.A. 10.

While preparing for trial, Cope discovered an engineering study of roads in Rock Creek Park that was conducted between 1986 and 1988. The study identified this stretch of Beach Drive as one of nine "high accident areas" in the park, and noted that sections of Beach Drive, including, apparently, the location of the accident, fell below "acceptable skid-resistance levels" in a test conducted five months after the accident. J.A. 164–65. The study recommended that future repaving use "polish-resistant coarse aggregate" as an overlay in the most dangerous curves. J.A. 166. As for the stretch of road in question here, the study noted that "[t]he curves should be adequately signed and the skid resistance maintained with an opened graded friction course." J.A. 246. Cope also offers an affidavit from a traffic engineer to the effect that over 50% of the accidents that occurred on that stretch of road over the last five years occurred during wet weather, while only 18% of accidents nationwide occur in wet conditions.

Despite the less-than-perfect road surface, the 1988 study listed this stretch of Beach Drive as 33rd on a maintenance priority list of 80 sections of park road. J.A. 168. Maintenance work on this section of road was preceded on the list by at least 15 other projects estimated to be of equal or less cost.

As for the presence of relevant warning signs, the record does not reflect precisely where such signs were located as of the date of the accident. A 1981 road sign inventory indicated that "slippery when wet" signs were located in two places on the half-mile stretch of road bracketing the curve where the accident occurred, and the Assistant Chief of Maintenance of the park stated that in 1990, a slippery road sign was posted in each direction on the same stretch of road, although there is no indication of how close such signs were to the curve where the accident occurred.

In the District Court, the government moved for summary judgment, arguing that its action (or inaction) with respect to the road was discretionary and therefore exempt from suit under the FTCA. J.A. 15. The District Court agreed, ruling that it had no jurisdiction to hear the case. *Cope v. Scott,* No. 90cv1111, mem. op. at 3–6 (D.D.C. June 26, 1992), *reprinted in* J.A. 535–38. Cope settled with Scott and now appeals the District Court's immunity ruling.

## II.

The FTCA authorizes district courts to hear suits against the United States

> for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). This broad waiver of sovereign immunity is limited, however, by the exceptions in 28 U.S.C. § 2680(a):

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government,* whether or not the discretion be abused.

28 U.S.C. § 2680(a) (emphasis added).

■ The second clause of this exception, emphasized above, is known as the "discretionary function" exception, and lies at the heart of the dispute in this case. When an individual is injured by an act of the government or a government employee, section 1346(b) allows him or her to bring suit unless the action that allegedly caused the injuries is a discretionary function as defined under

the FTCA. This exception was designed to prevent the courts from "second guessing," through decisions in tort actions, the way that government officials choose to balance economic, social, and political factors as they carry out their official duties. *See United States v. Varig Airlines,* 467 U.S. 797, 814, 820, 104 S.Ct. 2755, 2464–65, 2767–68, 81 L.Ed.2d 660 (1984).

Discretionary function determinations are jurisdictional in nature. While we must review the complaint to determine what actions allegedly caused the injuries, we do so only to determine whether the district court has jurisdiction over those actions, not to prejudge the merits of the case. If the district court has jurisdiction over the suit, the plaintiff must still prove that the government's actions were negligent in order for him to prevail.

■ The Supreme Court has established a two-step test that we use to determine whether an action is exempt from suit under the discretionary function exemption. *See United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The two steps of the test largely track the two clauses of section 2680(a). In the first step, we determine whether it is appropriate to analyze the action under the first or the second clause of the exception. In other words, we ask whether any "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273 (citing *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958). If a specific directive exists, then the employee had no "choice." The only issue is whether the employee followed the directive, and is thus exempt under the first clause, or whether the employee did not follow the directive, thus opening the government to suit. *See* 28 U.S.C. § 2680(a). Because no choice is involved where a "specific prescription" exists, the discretionary function exception contained in the second clause is not applicable.

■ The discretionary function exception *may* be applicable where there is no specific prescription and the government employee has a "choice" regarding how to act in a particular circumstance. This is true more often than one might expect. Despite the pervasiveness of regulation, government policies will almost always leave some room for individual choice. If the choice led to the events being litigated, the exception may apply. But not all actions that require choice—actions that are, in one sense, "discretionary"—are protected as "discretionary functions" under the FTCA.

This brings us to the second step of the test, where the "basic inquiry" is whether the challenged discretionary acts of a government employee "are of the nature and quality that Congress intended to shield from tort liability." *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764. Decisions that require choice are exempt from suit under the FTCA only if they are "susceptible to policy judgment" and involve an exercise of "political, social, [or] economic judgment." *Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275; *Varig,* 467 U.S. at 820, 104 S.Ct. at 2768; *see Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959 (focusing the analysis on whether a decision is "based on considerations of public policy"). The Court recognized in *Gaubert,* for example, that daily decisions regarding the management of a troubled savings and loan "implicate[d] social, economic, or political policies," and were therefore exempt. *Gaubert,* 499 U.S. at 332, 111 S.Ct. at 1278. In contrast, the Court noted that a government employee may cause an automobile accident through the exercise of poor discretion, but that this type of "garden-variety" discretion is not protected. *See id.,* 499 U.S. at 325 n. 7, 111 S.Ct. at 1275 n. 7. Only discretionary actions of greater significance—those grounded in "social, economic, or political goals"—fall within the protection of the statute. *See Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273.

Determining whether a decision is "essentially political, social, or economic," *Red Lake Band of Chippewa Indians v. United States,* 800 F.2d 1187, 1195 (D.C.Cir.1986) (internal citations and punctuation omitted), is admittedly difficult, since nearly every government action is, at least to some extent, subject to "policy analysis." *See, e.g., Gaubert,* 499 U.S. at 336, 111 S.Ct. at 1280–81 (Scalia, J., concurring) (noting that even the decisions of a government driver may implicate policy

choices). "Budgetary constraints," for example, "underlie virtually all government activity." *ARA Leisure Services v. United States,* 831 F.2d 193, 196 (9th Cir.1987). At oral argument, counsel for the government asserted that these underlying fiscal constraints should therefore exempt "virtually all government activity." With the exception of discretion exercised by bad drivers, the government appears to argue that decisions that involve choice and the faintest hint of policy concerns are discretionary and subject to the exception. This approach, however, would not only eviscerate the second step of the analysis set out in *Berkovitz* and *Gaubert,* but it would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity. *See id.* It was thus not surprising that, when pressed at oral argument, government counsel was unable to provide, under its theory, even one example of a discretionary decision that would not be exempt for failure to implicate policy concerns.

The government reads the exception far too broadly. The question is not whether there is any discretion at all, but whether the discretion is *"grounded* in the policy of the regulatory regime." *Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275 (emphasis added). The mere association of a decision with regulatory concerns is not enough; exempt decisions are those "fraught with ... public policy considerations." *Sami v. United States,* 617 F.2d 755, 767 (D.C.Cir.1979) (Wald, J.). The mere presence of choice—even if that choice involves whether money should be spent—does not trigger the exception.

■ Just as we reject the government's effort to expand the exception too far, we also reject Cope's efforts to restrict its application. Cope argues, first, that the government cannot claim the exemption unless it is able to demonstrate that there was an "actual, specific decision involving the balancing of competing policy considerations." Cope Br. at 27–28, 31. The Supreme Court has emphasized, however, that the issue is not the decision as such, but whether the "nature" of the decision implicates policy analysis. *See Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275; *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764; *Baum v. United States,* 986 F.2d 716, 721

(4th Cir.1993). What matters is not what the decisionmaker was thinking, but whether the type of decision being challenged is grounded in social, economic, or political policy. *See Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275. Evidence of the actual decision may be helpful in understanding whether the "nature" of the decision implicated policy judgments, but the applicability of the exemption does not turn on whether the challenged decision involved such judgments.

For the same reasons, we reject Cope's argument that the government's acts are not discretionary since they involve the "implementation" of government policy. *See* Cope Br. at 27, 30. Cope draws this argument from *Indian Towing v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), in which the Supreme Court allowed the plaintiffs to sue the government for negligent failure to maintain a lighthouse. Cope argues that *Indian Towing* means that the "implementation" or "execution" of policy decisions—particularly with respect to warning the public about hazards resulting from negligence—is never protected under the exception. Cope's argument, however, is merely an effort to establish yet another in a long series of "analytical frameworks" that the Supreme Court has rejected as an inappropriate means of addressing the discretionary function exemption. *See Red Lake Band,* 800 F.2d at 1195 (noting the tendency of courts to create "conclusory and not particularly useful" "analytical frameworks"); *Gaubert,* 499 U.S. at 325–26, 111 S.Ct. at 1275–76; *Indian Towing,* 350 U.S. at 65, 76 S.Ct. at 124–25. The mechanistic application of these frameworks encourages courts to avoid the proper analysis: Whether the nature of the decision involved the exercise of policy judgment. *Gaubert* cautioned against this sort of shortcut when it rejected a lower court decision that relied upon a distinction between exempt "planning" decisions and non-exempt "operational" decisions. *See* 499 U.S. at 325–26, 111 S.Ct. at 1275–76; *see also Indian Towing,* 350 U.S. at 65, 76 S.Ct. at 124 (rejecting, in a similar context, a "governmental"/"nongovernmental" distinction). Recognizing that the focus is on the nature of the decision, not on the semantic pigeonhole into which the action can be put, we decline

to follow Cope's reading of the case law, focusing instead, as we are required, on whether the decision is "fraught with" economic, political, or social judgments. No matter the level at which the decision was made, the nature of the decision, or the impact it had on others, we have consistently held that the discretionary function exception applies "only where 'the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency.'" *Sami*, 617 F.2d at 766 (citing *Blessing v. United States*, 447 F.Supp. 1160, 1170 (E.D.Pa.1978)). Using this approach as our touchstone, we proceed to an analysis of this case.

### III.

■■■ Both because the District Court granted a motion for summary judgment, and because the question before us relates to a purely legal issue—the jurisdiction of the District Court—we review the decision below *de novo*. *See Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994) (summary judgment reviewed *de novo*); *Weissich v. United States*, 4 F.3d 810, 812 (9th Cir.1993) (rulings on application of discretionary function exemption are reviewed *de novo*), *cert. denied,* —— U.S. ——, 114 S.Ct. 2705, 129 L.Ed.2d 833 (1994). As long as the District Court's legal conclusion was correct, its grant of summary judgment was appropriate, for we perceive in the record no genuine issues of fact material to the jurisdictional issue.

In his complaint, Cope makes two allegations regarding the conduct of the United States. He argues, first, that the government failed "to appropriately and adequately maintain the roadway of Beach Drive," and second, that the government failed "to place and maintain appropriate and adequate warning signs along the roadway." J.A. 10. We address each of his points in turn, again emphasizing that we do not decide the merits of the case, but only whether Cope is entitled to an opportunity to prove his case at trial.

■■■ With respect to his allegation regarding the state of the road surface, Cope points to a manual entitled "Park Road Standards," and, applying step one of the analysis, argues that it sets forth "specific prescriptions" regarding skid resistance and surface type. We do not read the manual to set forth such requirements. The standards, which were adopted in 1984, apply only to "new construction and reconstruction" of park roads. J.A. 140. But Beach Drive was neither constructed nor reconstructed after 1984. Even if the standards were relevant to the condition of Beach Drive, the manual notes that they are applicable only "to the extent practicable." *Id.* To us, this caveat means that the standards are applicable only when no competing priorities exist. Such flexibility is the essence of discretion.

Nor are we persuaded by Cope's argument that statutes requiring the Park Service to work with other agencies to establish and implement highway safety programs create non-discretionary prescriptions. *See, e.g.,* 23 U.S.C. § 402 (1988 & Supp. V. 1993); 23 C.F.R. §§ 1230.1–4 (1994). These statutes do not contain directives so precise that they constrain the Park Service's control over the surface of Beach Drive. Absent such directives, any action taken (or not taken) regarding the matter is an exercise of discretion.

We turn, then, to the second step of the analysis, in which we ask whether the discretion exercised over the maintenance and reconstruction of Beach Drive is "subject to policy analysis" and thus discretionary in the sense of the FTCA. The District Court ruled that Cope's complaint raised a "matter of roadway design and construction," *see* mem. op. at 3, *reprinted in* J.A. 535, concluding that "design" implicates policy judgments. As a result, the court held that the exception applied and that the government was immune from suit. The parties follow the lead of the District Court in their briefs before this court, and debate over whether the "failure to maintain adequate skid resistance" is a question of "design" or "maintenance." We decline to be drawn into this debate because it would divert us from the proper analysis—whether the "failure to maintain adequate skid resistance" is the kind of discretion that implicates "social, economic, or political" judgment.

As we understand the record and the facts as presented by the parties, no regular maintenance would have prevented the road from deteriorating in the way Cope alleges. This case is therefore different from a case involving mundane decisions to fill or not fill potholes, or even the cumulative effect of such decisions. In *ARA Leisure Services,* for example, the Ninth Circuit allowed plaintiffs to sue the government for the negligent maintenance of a "badly eroded stretch" of road in Denali National Park. 831 F.2d at 194–95. As we read the case, the Ninth Circuit appears to have believed that all the "decisions" that caused the road to deteriorate involved routine questions of maintenance not "grounded in social, economic, or political policies." *Id.* at 195. In this case, however, such decisions would not have prevented the alleged "inadequate skid resistance." The state of Beach Drive alleged by Cope could have been prevented only by reducing the traffic load, initially paving it with a different surface, resurfacing the curve entirely, or at least milling the curve to create grooves in the surface. *See* J.A. 147N, 164–66, 183–92, 246, 517–18, 526–27 (alluding to or directly recommending such actions). Determining the appropriate course of action would require balancing factors such as Beach Drive's overall purpose, the allocation of funds among significant project demands, the safety of drivers and other park visitors, and the inconvenience of repairs as compared to the risk of safety hazards. These balances are apparent throughout the 1988 study that placed maintenance on this section of Beach Drive in the middle of a priority list of work. that needed to be done on eighty different sections of park roads. Park Service decisions regarding the management of Beach Drive are therefore much like the decisions exempted by the Supreme Court in *Varig:* "[S]uch decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding." 467 U.S. at 820, 104 S.Ct. at 2767. And, as in *Varig,* we decline to "second guess" those judgments here. *Id.*

## IV.

■ We reach a different conclusion with respect to Cope's allegation that the government failed to post adequate warning signs about the nature of the road surface. His case rests on the argument that given the "very specific slippery road problem" on Beach Drive, a "permanently displayed static 'slippery when wet' road sign is inadequate to warn" of the hazard. Affidavit of engineer Roy W. Anderson, J.A. 448–49. Cope hints that the failure to post an adequate sign is nondiscretionary, but relies mostly on the second step argument that any discretion does not implicate policy concerns. The government argues that no specific prescriptions regarding the posting of signs exist, that the resulting discretion involves the exercise of "engineering and aesthetic factors" as well as economic considerations, and that the presence of those concerns in the decision making means that the decisions are exempt from suit under the FTCA.

The government admits that it "is the policy of the National Park Service to follow" the Manual on Uniform Traffic Control Devices when posting signs, but argues that the final decision depends on a variety of engineering and aesthetic considerations. J.A. 38. Our own review of this manual reveals that it is more of a guidebook for the installation of signs than a "specific prescription" relied on by the Park Service. As the manual points out, it is "not a substitute for engineering judgment," J.A. 453, and warning signs should be posted only "when it is deemed necessary." J.A. 455. We conclude, then, that the posting of signs in Rock Creek Park involves the exercise of discretion.

In contrast to our decision regarding the road surface, however, we find that the discretion regarding where and what type of signs to post is not the kind of discretion protected by the discretionary function exception. While it may be true, as the government claims, that the placement of signs involves judgments because engineering and aesthetic concerns determine where they are placed, such judgments are not necessarily protected from suit; only if they are "fraught with public policy considerations" do they fall within the exception, and we do not think

that is the case here. The "engineering judgment" the government relies on is no more a matter of policy than were the "objective scientific principles" that the *Berkovitz* court distinguished from exempt exercises of policy judgment. *See* 486 U.S. at 545, 108 S.Ct. at 1963.

With respect to the aesthetic considerations, while we acknowledge the Park Service's desire to maintain the park in as pristine a state as possible, the government has failed to demonstrate how such a desire affects the placement of traffic signs on Beach Drive. Indeed, the government's argument is difficult for us to accept in view of the fact that, including the "slippery when wet" signs, no less than "twenty-three traffic control, warning, and informational signs" already exist on the half-mile stretch of road bracketing the curve on which the accident occurred—a stretch of road that carries 20,000 vehicles daily. J.A. 39. We agree that in certain circumstances, decisions will be exempt under the FTCA because they involve difficult policy judgments balancing the preservation of the environment against the blight of excess signs. But this is not one of those circumstances. Beach Drive is not the Grand Canyon's Rim Drive, nor Shenandoah's Skyline Drive. Here, the Park Service has chosen to manage the road in a manner more amenable to commuting through nature than communing with it. Having done so, and having taken steps to warn users of dangers inherent in that use, the Park Service cannot argue that its failure to ensure that those steps are effective involves protected "discretionary" decisions.

Other cases exempting the failure to post warning signs are thus easily distinguishable. In those cases, the decisions were based on a reasonable desire to protect the experience of the park visitor. In *Bowman v. United States,* 820 F.2d 1393, 1395 (4th Cir.1987), for example, the Fourth Circuit concluded that the failure to place a guardrail along the Blue Ridge Parkway was a decision that may have implicated policy considerations such as protecting the scenic vista. And in a case involving a fall at Pinnacles National Monument, the government was able to demonstrate that the decision not to post warning

signs in the park, which was a wilderness area, was part of a policy decision to protect the wilderness experience in the park. *See Zumwalt v. United States,* 928 F.2d 951, 955 (10th Cir.1991).

The failure to warn in this case is much more like *Boyd v. United States,* where the Corps of Engineers created a reservoir, but failed to warn swimmers who regularly used a section of the lake that motorboats also used the area. 881 F.2d 895, 896 (10th Cir. 1989). The Tenth Circuit concluded that while the failure to designate the area as a "swimming only" zone was discretionary, not warning swimmers about the presence of boats "simply [did] not involve the exercise" of social, economic, or political policy. *Id.* at 897–98. Like the Tenth Circuit in *Boyd,* we conclude that the failure to post adequate warning of dangers on the road does not implicate political, social, or economic decisions of the sort that the exception was designed to protect. Beach Drive is a commuter route through an urban park. The Park Service has already posted signs in an effort to alert drivers to safety hazards on the road. In light of these factors, the Park Service has understandably been unable to articulate how the placement of additional or different signs on Beach Drive implicates the type of economic, social, or political concerns that the discretionary function exception protects from suit under the FTCA.

We affirm the District Court's dismissal of Cope's claim regarding negligent maintenance of the road surface. We conclude, however, that the District Court had jurisdiction over the allegations that the Park Service failed adequately to warn of dangers on Beach Drive. To the extent the Court ruled to the contrary, we vacate its order and remand for further proceedings. Cope is entitled to try to persuade a factfinder that the government acted negligently by failing adequately to sign the curve on Beach Drive.

*So ordered.*