**Madolyn L. CRUMPTON, Appellant,**

v.

**Michael P.W. STONE, Secretary of the Army, et al., Appellees.**

No. 94–5056.

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 1995.

Decided July 28, 1995.

Brent L. Crumpton argued the cause, Birmingham, AL, for appellant. With him on the briefs was Charles S. Mitchell, Fairfax, VA.

Edith S. Marshall, Asst. U.S. Atty., argued the cause, Washington, DC, for appellees. With her on the brief were Eric H. Holder, Jr., U.S. Atty. and R. Craig Lawrence, Asst. U.S. Atty. John D. Bates, Asst. U.S. Atty., entered an appearance, Washington, DC, for appellee.

Before SENTELLE, HENDERSON and TATEL, Circuit Judges.

Opinion of the court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

In this case we must decide whether Madolyn L. Crumpton can sue the Department of the Army under the Federal Tort Claims Act for releasing records that allegedly caused her great embarrassment and emotional distress. Because no "federal statute, regulation, or policy specifically [proscribes]" the release of this information in response to a Freedom of Information Act request, and because the discretion exercised by the Army in evaluating the FOIA request is of the "nature and quality that Congress intended to shield from tort liability," *Cope v. Scott*, 45 F.3d 445, 448 (D.C.Cir.1995), we agree with the district court that the discretionary function exemption to the FTCA prevented it from taking jurisdiction over this case.

I.

Nearly ten years ago, the Army Inspector General, and then the Army Criminal Investigations Division, conducted an investigation into allegations that Col. Alfred T. Crumpton had padded his travel expense reports and that he had accepted gratuities while stationed in England as commander of an Army Standardization Group. Near the close of that investigation, after the Army had reassigned the Crumptons to New Jersey, Col. Crumpton committed suicide, an event into which the CID conducted another investigation. The reports of these investigations, known as "Reports of Inquiry" or "Reports of Investigation" (ROIs), included information regarding Mrs. Crumpton and her family. Neither investigation led to criminal charges.

In response to FOIA requests for the ROIs by New Jersey newspapers, the Army concluded that the reports were not, as a whole, likely to lead to an "unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6) & (7)(C) (1988) (exempting certain information from mandatory release under the Freedom of Information Act). It thus released the reports, although it redacted certain portions because of privacy concerns. Mrs. Crumpton claims that even more of the information should have been withheld because the Army knew its release would cause an "unwarranted invasion of personal privacy" by revealing to the public both false and intimate information about her and her family. The portions of the ROI of fraud that the Army released, for example, included reports of allegations linking Mrs. Crumpton to the alleged fraud as well as

statements she made to investigators. The ROI of death included details regarding the Crumpton family's discovery of, and immediate reaction to, Col. Crumpton's suicide.

Seeking relief under the Federal Tort Claims Act, Mrs. Crumpton initiated administrative proceedings, arguing that the release of the ROIs invaded her personal privacy and caused her significant emotional distress. After the Army rejected her claim, she sued. Following a four-day trial, the district court ruled that it had no jurisdiction under the FTCA and dismissed the case. Mrs. Crumpton appeals.

## II.

The FTCA waives the government's immunity in suits "for money damages ... for ... personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b) (1988). The Act contains two exceptions that are at the heart of this dispute. The "due care" exemption excludes from district court jurisdiction "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a) (1988). The "discretionary function" exemption bars district court jurisdiction over claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.*

■■■■ The district court concluded that both exemptions applied, i.e., that Army officials had exercised "due care" in determining that the requested information was not exempt, and that the decision involved in that determination was an exercise of a "discretionary function" that the FTCA exempts from judicial review. *See Crumpton v. United States,* 843 F.Supp. 751, 756–57 (D.D.C.1994). To the extent that it rests on interpretations of law, we review the district court's decision *de novo, see Cope,* 45 F.3d at 450, accepting its factual findings unless clearly erroneous.

*See Herbert v. National Academy of Sciences,* 974 F.2d 192, 198 (D.C.Cir.1992).

■■■■ Our jurisdictional analysis begins with the two-part test the Supreme Court uses to determine whether the discretionary function clause of section 2680(a) applies to the facts of a case. First, we ask whether a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). If so, then the "due care" clause applies and the government is exempt from suit as long as the employee has exercised due care in following the dictates of the statute or regulation. If there is no specific prescription, then some choice is involved in the employee's action, and we move to the second step, under which we must determine whether that choice qualifies as a discretionary function under the FTCA. If the discretion exercised by the agency involves "political, social, or economic judgments," *Cope,* 45 F.3d at 448 (internal punctuation and citation omitted), it is the type of decision that is of "the nature and quality that Congress intended to shield from tort liability" through the discretionary function exemption. *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984); *see also, Cope,* 45 F.3d at 448–50. In assessing the "discretionary" nature of the decision, we look not to what the decisionmaker in a particular case was thinking, but to "whether the *type* of decision being challenged" implicates policy judgments. *See Cope,* 45 F.3d at 449 (emphasis added).

Mrs. Crumpton argues that the Army's decision to release the information about her husband was specifically proscribed by FOIA, Army regulations, and the Privacy Act, 5 U.S.C. § 552a(b) (1988 & Supp. V 1993). We disagree, concluding in section III that no statute or regulation, standing alone, specifically limits the Army's discretion. Mrs. Crumpton further argues that any discretion that the Army did have was not the type of discretion that Congress in-

tended to shield from tort liability. We address this argument in section IV, concluding, as did the district court, that the Army's discretion was not of the "nature and quality" that Congress intended to subject to tort liability.

### III.

■ We begin with the Freedom of Information Act, the first of the three authorities that Mrs. Crumpton claims limited the Army's discretion to release the reports on her husband. Under FOIA, an agency "shall" make available to any person records that the person "reasonably describes" in a request to the agency "in accordance with published rules" governing such requests. 5 U.S.C. § 552(a)(3) (1988). An agency is excused from this requirement only with respect to materials that fall within one of FOIA's nine specific exemptions. *See* § 552(b)(1)–(9). If the agency determines that the information is not exempt, it must release it. If an exemption applies, the agency may withhold the information, although FOIA itself does not require an agency to do so. As this court stated almost two decades ago, "the exemptions to the FOIA are permissive rather than mandatory." *Mead Data Central, Inc. v. United States Dept. of the Air Force,* 566 F.2d 242, 258 (D.C.Cir. 1977); *see also Chrysler Corp. v. Brown,* 441 U.S. 281, 293, 99 S.Ct. 1705, 1713, 60 L.Ed.2d 208 (1979) ("Congress did not design the FOIA exemptions to be mandatory bars to disclosure."); *Mobil Oil Corp. v. EPA,* 879 F.2d 698, 700 (9th Cir.1989) ("The exemptions are permissive, and an agency may voluntarily release information that it would be permitted to withhold under the FOIA exemptions."). Enacted to encourage the disclosure and limit the withholding of government-held records, FOIA allows an agency to withhold information in certain circumstances, but it "[does] not limit an agency's discretion to disclose information." *Chrysler,* 441 U.S. at 294, 99 S.Ct. at 1714. FOIA, therefore, does not "specifically prescribe" an agency's decision to release information pursuant to a FOIA request. *See Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273.

■ Mrs. Crumpton argues that even if FOIA leaves agencies with discretion to release information, Army regulations limited that discretion. She claims, for example, that section 5–101 of the Army's general FOIA regulations sets forth the only conditions under which certain types of records may be released pursuant to FOIA requests. *See* Release of Information and Records from Army Files, Army Reg. No. 340–17 at § 5–101 (Oct. 1, 1982), *in* Joint Appendix (J.A.) I at 234, 262 (codified at 32 C.F.R. § 518.14(b) (1986)). We do not read that section so broadly. Section 5–101(b) merely outlines those instances in which personnel records "will" be released. *Id.* at § 5–101(b). It does not limit the Army's discretion to release information in other instances when it concludes, after subjecting requests to the standard FOIA review process, that release is either necessary or appropriate. It is true that section 5–101(d)(2) states that certain information about criminal investigations will be released "only" in certain circumstances. *Id.* at § 5–101(d)(2). That section, however, explicitly addresses the rights of the accused "before the determination of the case;" it does not create a general privacy right for those referred to in the records. *Id.* at § 5–101(d). After Col. Crumpton's death and the close of the investigation, therefore, any restriction this section placed on release was no longer controlling.

■ Mrs. Crumpton points to an Army pamphlet entitled "A Guide for the Survivors of Deceased Army Members," arguing that it established an Army policy that precluded the release of portions of the reports on her husband. According to the pamphlet, "Out of respect for the privacy of the [primary next of kin,] the Report of Investigation is not released to other family members without the written consent of the [primary next of kin.]" Government Brief at 23 (quoting Department of the Army Pamphlet 608–4). We do not think that this pamphlet, which was apparently drafted by the Army's "Casualty Affairs" office as a guide to the Army's relationship with a deceased's family, is a definitive statement of Army policy with re-

spect to the Army's treatment of third-party requests for information under FOIA. We can find no evidence that the Army used this pamphlet as a guide for evaluating FOIA requests. Indeed, according to testimony in the district court, the Criminal Investigations Division told the Casualty Affairs office that the pamphlet appears to be "an absolute guide on everything and it is not." *See* Transcript at 79, *Crumpton v. Stone,* No. 89cv3128 (D.D.C. June 15, 1993) (testimony of Jeffrey Porter, CID employee), *in* J.A. I at 133.

Nor are we persuaded, as Mrs. Crumpton argues, that Army Regulation 195–2, which governs the Army's criminal investigation activities, limits the release of information from investigative files except in limited cases that are not present here. *See, e.g.,* Criminal Investigation Activities, Army Reg. No. 195–2, § 3–14(d) (Oct. 30, 1985), *in* J.A. I at 304, 310 (stating, in section on "Coordination," that "[d]erogatory information that mentions or can be tied to particular individuals will be released only to those persons whose official duties create a definite need to have access to the information"). Only section 4–3(j) of this regulation addresses the release of material in the context of a media request, and that section is procedural only, allowing requests for CID investigative information "not resolved at the investigating element's level [to] be directed to the Commander [of the CID]." *Id.,* § 4–3(k), *in* J.A. I at 314. This procedure was apparently followed in this case. The request for release was, according to the district court, reviewed by the Staff Judge Advocate for the CID, "technical advisor to the commanding general," who then applied the Army's general regulations governing FOIA requests. *See Crumpton,* 843 F.Supp. at 755. Because Army Regulation 195–2 simply refers FOIA requests to the CID for further FOIA processing, it does not independently limit the Army's discretion to release information.

■ Mrs. Crumpton argues, finally, that even if Army regulations did not specifically limit the Army's discretion to release the reports on her husband, the Privacy Act did. According to subsection (b) of that statute, "No agency shall disclose any record which is contained in a system of records by any means of communication ... except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). Subsection (b)(2), however, explicitly permits an agency to disclose information if its disclosure is "required under [FOIA]." § 552a(b)(2). That language, this court concluded in 1982, "represents a Congressional mandate that the Privacy Act *not* be used as a barrier to FOIA access." *Greentree v. United States Customs Service,* 674 F.2d 74, 79 (D.C.Cir.1982). Two years later Congress incorporated that holding into the Privacy Act by adding subsection (t)(2), which states that "No agency shall rely on any exemption in [the Privacy Act] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of [FOIA]." 5 U.S.C. § 552a(t)(2) (1988). The Privacy Act, therefore, does not specifically limit the agency's discretion to withhold records unless those records are exempt from release under FOIA. Since the Army released the records relating to Col. Crumpton because it decided that they were not exempt under FOIA, however, Mrs. Crumpton can maintain an FTCA suit only if she can challenge the Army's decision that the information that allegedly injured her was not exempt. And since no statutes or regulations specifically required the Army to classify this material as exempt, district court jurisdiction over the classification depends solely upon whether it is a "discretionary function" under the FTCA. It is to that issue that we now turn.

## IV.

■ To determine whether a classification decision is a "discretionary function" under section 2680(a), we need not go much beyond the language of exemptions (6) and (7)(C). Those exemptions allow agencies to withhold information if its release would constitute an "unwarranted invasion of personal privacy," *see* 5 U.S.C. § 552(b)(6) & (7)(C), and require agencies to balance the public's interest in disclosure against the private interest in withholding. *Department of the Air Force v. Rose,* 425 U.S. 352, 373, 96 S.Ct. 1592, 1604–

05, 48 L.Ed.2d 11 (1976). Balancing the societal concern for personal privacy against the "basic policy" of the act—"disclosure, not secrecy," *see id.* at 361, 96 S.Ct. at 1599—is "fraught with ... public policy considerations" that necessarily involve the exercise of "political, social, and economic judgment," *Sami v. United States,* 617 F.2d 755, 767 (D.C.Cir.1979); *Varig,* 467 U.S. at 820, 104 S.Ct. at 2767–68; *see also Cope,* 45 F.3d at 448–49. It is, therefore, a quintessential discretionary function, "'of the nature and quality that Congress intended to shield from tort liability'" and thus exempt from suit under the FTCA. *Cope,* 45 F.3d at 448 (quoting *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764).

██ Mrs. Crumpton argues that because FOIA requires courts to review agency decisions to withhold information *de novo, see* 5 U.S.C. § 552(a)(4)(B), all agency decisions classifying information under the statute—whether exempt or not—are subject to judicial second-guessing in tort. We cannot agree. Although Congress has allowed courts to review *de novo* an agency decision to classify information as exempt, courts conduct that review only under limited circumstances, and such review is always conducted in light of FOIA's "'general philosophy of full agency disclosure,'" *Rose,* 425 U.S. at 360, 96 S.Ct. at 1599 (citing legislative history). FOIA's carefully circumscribed judicial review provision does not change the nature of the agency's classification decision; it continues to "implicate[ ] social ... [and] political policies," *Gaubert,* 499 U.S. at 332, 111 S.Ct. at 1278–79, and is therefore a discretionary function exempt from suit under the FTCA.

In contrast to FOIA's judicial review provisions, which are intended to ensure that FOIA accomplishes its purpose of changing public disclosure law from a "withholding statute [to] a disclosure statute," *EPA v. Mink,* 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973), allowing courts to second-guess in tort the political and social judgments involved in classifying records under the act would encourage agencies to *withhold* information, thereby completely undermining FOIA's "general philosophy" fa-

voring release. The Privacy Act already provides some measure of deterrence to "intentional or willful" agency decisions to release information that could be considered exempt under the act, *see* 5 U.S.C. § 552a(g)(4) (1988), but an agency liable under the FTCA for making a merely negligent decision to release information would have a significant incentive to withhold information whenever it had any question about whether the information fell within one of FOIA's exemptions. Agencies would have little incentive to exercise the political and social judgment that they retain under FOIA because courts could always second-guess—and even impose damages for—their decision to release non-exempt information. Because Congress intended the discretionary function clause of 28 U.S.C. § 2680(a) to prevent this very type of judicial second-guessing of agency discretion, we conclude that Mrs. Crumpton cannot maintain her FTCA suit against the Army.

### V.

Our conclusion does not mean that we condone the Army's decision to release the reports on Col. Crumpton or its classification of the released material as outside the scope of FOIA exemptions (6) and 7(C). Indeed, to us some of this material seems extraordinarily private, and we do not understand why the Army needed to release it to satisfy the public that it vigorously pursued allegations of fraud relating to one of its officers. Nevertheless, we conclude that Mrs. Crumpton cannot maintain an FTCA suit against the Army because Congress has not authorized courts to "second-guess" in tort an agency's decision to release information that it believes it may—or must—release under FOIA. Finding that Mrs. Crumpton's remaining arguments are without merit, we affirm the decision of the district court.

*So ordered.*