Denise NAIDU, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. CIV.A. 98–5344.

United States District Court,
D. New Jersey.

April 6, 2000.

George A. Mauro, Jr., Mauro, Savo, Camerino & Grant, Somerville, NJ, for Denise Naidu.

Robert A. Kirsch, Assistant U.S. Attorney, Office of the U.S. Attorney, Newark, NJ, for U.S.

## MEMORANDUM OPINION

WOLIN, District Judge.

Plaintiff, Denise Naidu, filed suit to recover damages for injuries allegedly suffered when she slipped and fell while descending a staircase at a building within Fort Hancock, a National Historic Landmark. This case is now before the Court on defendant's motion to dismiss. Defendant, the United States, moves to dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction. In the alternative, defendant moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff opposes the motion. The Court has considered this matter, on the papers, pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court will dismiss the Complaint, in its entirety, for lack of subject matter jurisdiction.

### BACKGROUND

Plaintiff was injured at Building 18 of Fort Hancock, located at the Sandy Hook Unit of the Gateway National Recreational Area, in Highlands, New Jersey. Plaintiff sustained her injuries as she fell down the last two stairs of the main stairway at Building 18. Plaintiff claims that she fell because (1) the stairs were coated with a slippery surface; (2) she was misled by the handrail bannister which terminated at the second step, not at the bottom step; and (3) the lighting was inadequate. Plaintiff admitted, however, that while descending the stairs, she was holding a "large" computer box which obstructed her view of her feet. In addition, plaintiff testified in her deposition that she placed no hand on the handrail but, instead, used it as a visual marker. She also admitted she fell because "[she] thought [she] was all the way down and there was one step to go."

**Fort Hancock**

Fort Hancock, named for General Winfield Scott Hancock, has been an important historic and military site

throughout American history.[1] (Kirsch exhs. 4–5).[2] At the time of the Revolutionary War, Sandy Hook (which encompasses Fort Hancock) was occupied by British and Loyalist Troops. (*Id.*) During the War of 1812, the United States Army built a temporary fort and, in 1859, construction began on a permanent masonry fort. (*Id.*) For close to a hundred years, Fort Hancock served as an active coastal defense fortification designed and armed to defend New York Harbor and the vicinity from sea and air attacks. (*Id.*) The Army occupied the fort in both World War I and II, when its population rose to 18,000. (*Id.*) While the military was active at the fort, Building 18 (the location of plaintiff's accident) served as the officer's quarters for military personnel. (Baerlin Decl. ¶ 7).

Building 18 (the "Officer's Quarters") and the other buildings on "Officer's Row" not only possess historic significance, they also reflect the architectural mood of the times. Of note, the buildings on Officer's Row, which have been described as "the most impressive" buildings at the Fort, were constructed in the Colonial Revival architectural style. (Kirsch exh. 5). This architectural style constituted a rejection of the Victorian style and a rebirth of the Georgian and Federal designs which typified the Revolutionary War era. (*Id.*)

Due to its historical significance, Fort Hancock, inclusive of the Officer's Quarters, was designated as a National Historic Landmark. *See* National Historic Preservation Act, 16 U.S.C. §§ 470–470x–6; Baerlin Decl. ¶ 6. Of significance to this motion, the Officer's Quarters' staircase and handrail bannister—which plaintiff claims defendant negligently maintained—are part of the original construction of the quarters and have been determined to be a "character defining" feature of this historic site. (Baerlin Decl. ¶ 9).

In 1974, the Fort Hancock was deactivated and transferred to the National Park Service ("NPS") of the Department of the Interior. As part of its statutory mission and mandate, the NPS must "conserve ... historic objects .. [and] provide for them in such a manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1; Baerlin Decl. ¶ 3.

In 1989, the NPS authorized the American Littoral Society (the "ALS"), a nonprofit organization devoted to the study and conservation of aquatic life, full use of the Officer's Quarters. In April 1997, plaintiff, then an employee of the ALS, sustained her injuries on the stairs of the Officer's Quarters during the course of her employment.

**Plaintiff's Claim**

Plaintiff brings a one-count complaint against defendant, sounding in negligence, under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80. According to plaintiff, defendant was negligent because (1) the stairs of the Officer's Quarters were coated with a slippery surface; (2) the handrail banister terminated at the second step—not the bottom step; and (3) the lighting was inadequate.

Defendant now moves to dismiss the complaint for lack of subject matter juris-

---

1. Where, as here, the Court determines the proper scope of its subject matter jurisdiction, the Court may examine the evidence beyond the confines of plaintiff's complaint. *See Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir.1997). Indeed, "[b]ecause the [defendant's] motion [is] not merely a facial challenge to the district court's jurisdiction, the [Court is] not confined to the allegations in the plaintiff's complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction."

*Id.* at 179; *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995) ("In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings.... Indeed, the 'trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.' ") (internal citations omitted).

2. Kirsch exhibits 4–5 consist of Fort Hancock Park Service publications.

diction.[3] Defendant contends that the acts alleged in the plaintiff's complaint fall within the discretionary function exception to the FTCA. *See* 28 U.S.C. § 2680(a). As such, defendant asserts the Court is without jurisdiction.

## DISCUSSION

Upon enacting the FTCA, Congress abrogated the federal government's sovereign immunity with regard to tort claims for money damages. Congress, however, created certain statutory exceptions to this waiver of sovereign immunity. Defendant's motion centers around one of these exceptions—the discretionary function exception.

■ Claims which fall within the discretionary function exception are outside the Court's jurisdiction. Indeed, under this exception, the waiver of the government's immunity

> shall not apply to ... [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

While the statute does not define "discretionary function," the Third Circuit has explained that

> [t]he discretionary function exception is designed to protect policy making by the politically accountable branches of government from interference in the form of "second-guessing" by the judiciary-second guessing the result of which burdens the public fisc and the prospect of which skews the decision making process of the executive and legislative policymakers.

*Fisher Bros. Sales, Inc. v. United States,* 46 F.3d 279, 284 (3d Cir.1995) (en banc) (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Air-*

*lines),* 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)); *see also Gotha v. United States,* 115 F.3d 176, 179 (3d Cir. 1997) ("The reason for 'fashioning an exception for discretionary governmental functions' was to 'protect the government from liability that would seriously handicap efficient government operations.'" (quoting *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. 2755)).

■ The Supreme Court has adopted a two-stage inquiry in determining the applicability of the exception. "First, a court must consider if 'a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow.'" *Gotha,* 115 F.3d at 179 (citing *Berkovitz v. United States,* 486 U.S. 531, 537, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). If such a directive applies, the "employee has no rightful option but to adhere" to it. *Id.* As a result, no discretion exists, thus, rendering the exception inapplicable.

■ If, however, no directive applies, a court must consider a second step. Under this step, a court must determine "whether the challenged action or inaction 'is of the kind that the discretionary function exception was designed to shield.'" *Id.* (citing *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954). "Under this second prong, the court must determine whether the challenged discretionary actions or decisions were 'based on considerations of public policy.'" *Fisher Bros. Sales, Inc.,* 46 F.3d at 284. "Public policy" may be social, economic, or political. *See Varig Airlines,* 467 U.S. at 808, 104 S.Ct. 2755. "Public Policy" also includes decisions which further the aims of a governmental agency or institution. *See Chantal v. United States,* 104 F.3d 207, 212–13 (8th Cir.1997); *Redland Soccer Club, Inc. v. Department of Army,* 835 F.Supp. 803, 808–09 (M.D.Pa. 1993), *aff'd in part* and *rev'd in part,* 55 F.3d 827 (3d Cir.1995); *Cassagnol–Figuer-*

---

**3.** Defendant also moves, in the alternative, for summary judgment. The Court does not reach the merits of the summary judgment motion because the Court lacks jurisdiction.

*oa v. United States,* 755 F.Supp. 514, 519 (D.P.R.1991).

Notably, for the exception to apply under this second prong, the governmental agent need not have subjectively intended to exercise such discretion. Rather, "the focus of the inquiry is . . . on the nature of the actions taken and on whether they are *susceptible* to policy analysis." *United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (emphasis added). In other words, the Court should "ask only if the nature of the action taken, or not taken, is *susceptible* to policy analysis"—not whether the agency actually contemplated a decision. *Gotha,* 115 F.3d at 180 (citing *Fisher Bros.,* 46 F.3d at 284) (emphasis added); *see also Smith v. Johns–Manville Corp.,* 795 F.2d 301, 308–09 (3d Cir.1986) ("The test is not whether the government actually considered each possible alternative in the universe of options, but whether the conduct was of the type associated with the exercise of official discretion.").

Pursuant to this two-step inquiry, the Court must determine whether plaintiff's claim falls within the discretionary function exception. If it does, the Court must dismiss the case for lack of subject matter jurisdiction because the United States would be immune from suit.

With regard to the first step, plaintiff concedes that no federal statute, regulation, or policy directive is directly applicable. As a result, the first part of the exception is satisfied. The Court's analysis, thus, focuses solely on the second step.

As to the second step, the Court must determine whether the NPS's action, or inaction was susceptible to a policy analysis. *See Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267. In making such a determination, the Court examines the statutorily prescribed mission and mandate of the NPS. Pursuant to this NPS mission and mandate, the NPS must "*conserve* the scenery and the natural and *historic objects* . . . and to provide for the enjoyment of same in such manner and by such means as will leave them *unimpaired* for the enjoyment of *future generations.*" 16 U.S.C. § 1 (emphasis added); Baerlin Decl. at ¶ 3.

In light of the NPS's mission and mandate, the Court finds that the NPS's action regarding the condition of the staircase is susceptible to a policy analysis. Indeed, the NPS decision to leave the staircase in its original condition is entirely consistent with its mission to "conserve" and "leave . . . unimpaired" "historic objects" for "the enjoyment of future generations." Specifically, the NPS "le[ft] unimpaired" the staircase in the Officer's Quarters, the "character defining feature" of this historic building. (Baerlin Decl. ¶ 9). The Court cannot now "second-guess" the NPS's decision to balance the safety benefit of altering the condition of the staircase with the effect of such changes on the Officer's Quarters overall design and its historic significance. *See Fisher Bros. Sales, Inc.,* 46 F.3d at 284; *Chantal,* 104 F.3d at 211 ("It is well established that a decision which requires the weighing of competing interests is 'susceptible to policy analysis' and typifies the kind of governmental decision which congress intended to shield from judicial second-guessing."). Accordingly, the discretionary function exception applies, thus, leaving the Court without subject matter jurisdiction.

Moreover, because the discretionary function exception applies, negligence issues are of no moment. "[T]he government can be negligent, but nevertheless immune from tort liability." *See Sea–Land Service, Inc. v. United States,* 919 F.2d 888, 892 (3rd Cir.1990); *see also Nyazie v. Kennedy,* Civ.A. No. 97–0120, 1998 WL 32601, at *4 (E.D.Pa. Jan.27, 1998) ("Considerations of negligence are irrelevant to this inquiry."). Hence, the issue of whether the staircase was improperly maintained (i.e., the slippery staircase, inadequate lighting, and faulty bannister) is irrelevant. Indeed, the court refuses and, in fact, cannot examine the NPS's discre-

tionary choice to preserve the staircase in its original and allegedly negligent condition because the NPS's choice, by itself, falls within the discretionary function exception.[4]

Many courts have reached similar conclusions in similar cases involving the NPS. For instance, in *Dibartolo v. United States*, Civ. No. 95–3182, slip op. (D.N.J. Oct. 16, 1995) (Barry, J.), plaintiff, like in the instant case, slipped and fell on stairs at a Historic Landmark which was within the NPS's control. As she exited the Historic Railway Ticket Office at Ellis Island, plaintiff slipped on a wet, cast-iron, open-air staircase. *See id.* at 4. Plaintiff, suing the government for negligence under the FTCA, claimed, *inter alia*, that the stairs were not coated with a slip-resistant substance. *See id.* at 4–5.

Judge Barry granted the government's motion to dismiss, finding that the discretionary function exception applied. *See id.* at 5–18. The *Dibartolo* court reasoned that

> the applicable policy mandate was to preserve the [Historic Landmark] to the greatest extent feasible. Operating within that policy, however, the NPS remained free to choose the paint that, in its judgment, would best protect the historic cast-iron stairs from the elements. Thus, the decision to apply a particular paint represented a *choice* made in furtherance of the *public policy* with which the NPS has been charged to effectuate. . . . The fact that the paint did not contain or was not coated with a

slip-resistant additive goes only to the question of negligence, not immunity. *Id.* at 9.

In the instant case, like in *Dibartolo*, the NPS chose to preserve the historic integrity of the Officer's Quarters by not changing the condition of the staircase. Having made that decision pursuant to its congressionally delegated mission, the Court cannot reexamine the NPS's decision. *See also Chantal*, 104 F.3d at 211 (finding that the NPS's decision to not alter steps at a national monument or mark them with a visual warning involved policy considerations, and thus, the discretionary function exception barred plaintiff's negligence claim); *Cassagnol–Figueroa*, 755 F.Supp. at 518–19 (finding that the NPS's decision not to install safety features at a low wall of a 450–year–old fort was based on its mission to preserve historic objects in their original design and, thus, was a policy-based exercise of discretion).

Plaintiff places undue weight upon a District of Columbia Circuit decision, *Cope v. Scott*, 45 F.3d 445 (D.C.Cir.1995). In that case, plaintiff sustained injuries in an automobile accident on a NPS roadway. *See id.* at 446–47. In responding to an allegation that the NPS failed to properly place traffic warning signs on the roadway, the court declined to apply the exception. *See id.* at 451. The court held that the placement of warning signs was not "fraught with public policy considerations," in part, because the government had already posted many traffic warning signs on this roadway. *Id.* at 459, 451 (quoting *Sami v. United States*, 617 F.2d 755, 767

---

4. Plaintiff maintains that defendant should have provided a carpet on the "slippery" steps. Plaintiff argues that providing a carpet would not alter the stair-case, thus removing the NPS's decision from the discretionary function exception. This argument, however, is unavailing.

Whether the NPS could have made a less negligent choice which still would have preserved the staircase in its historic condition is not pertinent to the Court's inquiry. Rather, the pertinent question is whether the NPS's action was susceptible to a policy choice. Be-

cause the NPS chose to preserve the historic significance of the staircase by not altering it, the discretionary function exception applies. Indeed, the NPS's decision furthered its mission to preserve historic objects. The Court will not inquire as to whether the NPS should have made a better, less negligent, decision. Indeed, this choice was "precisely the type of decision that Congress intended to shield from judicial second-guessing through tort litigation." *Dibartolo v. United States*, Civ. No. 95–3182, slip opin., at \*10 (D.N.J. Oct. 16, 1995) (Barry, J.).

(D.C.Cir.1979)). The court reasoned that once the NPS had posted the signs, it had no protected "discretionary" decision regarding their placement.[5] *See id.* at 451–52.

The instant case is distinguishable from *Cope.* First, plaintiff does not allege a failure to warn.[6] Second, the NPS took no steps in posting warning signs. On the contrary, the NPS choose not to post such signs. Indeed, such a decision was similar to its choice in refusing to alter the staircase. *See, e.g., Sea–Land Service, Inc.,* 919 F.2d at 892–93 (holding that the choice not to warn of hazards was similar to the discretionary policy choice in permitting the hazards and, thus, was shielded from liability); *Dibartolo,* at *17 (holding that the "decision not to place a sign on the stairs in question was ... susceptible to the same policy concerns that motivated the overarching restorative efforts at Ellis Island" and "was, therefore, a matter of choice"). Hence, the reasoning of *Cope* is inapplicable to the instant case.

Plaintiff also relies on a line of inapposite cases which do not apply the discretionary function exception. For instance, in *Gotha,* the Third Circuit held that the United States Navy's failure to provide safeguards in a walkway, which resulted in a slip and fall, did not fall within the discretionary function exception. *See Gotha,* 115 F.3d at 180. The court concluded that walkway safeguards were speculative, remote, and "far removed from the policies applicable to the Navy's mission" to provide a defense for the nation. *See id.* at 180–81. Like the *Gotha* court, the court in *Raymond v. United States,* 923 F.Supp. 1419 (D.Kan.1996), held that the post office's failure to place a handrail on its steps was not a discretionary policy choice because it did not implicate the mission or mandate of the post-office nor did it involve public policy. *See also Gonzalez v. United States,* 690 F.Supp. 251 (S.D.N.Y. 1988). Quite differently, in the instant case, as explored above, the NPS's decision involving the historic staircase implicated the NPS's very mission and mandate—the preservation of historic objects. Accordingly, the discretionary function exception applies. The Court, thus, lacks subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court will grant the defendant's motion to dismiss the Complaint, in its entirety, for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

**5.** In *Cope,* the plaintiff also claimed that the government's "failure to maintain adequate skid resistance" on the road was not a discretionary function of the NPS. The court disagreed. Indeed, consistent with the instant decision, the court reasoned that the NPS's decision required a balancing between the "overall purpose" of the park roadway with the safety of drivers. The court concluded that such a choice was a NPS policy judgment which the court refused to second-guess. Hence, the court applied the exception.

**6.** Perhaps, plaintiff sees the futility in such an argument because she was very familiar with the staircase. She traversed the stairs roughly five times a day for the preceding three weeks.