**Phillip LAYTON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Reba J. RICHARDSON, Administratrix of the Estate of Ronnie Richardson, Deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 91–3448, 91–3450.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1992.

Decided Jan. 28, 1993.

Order Denying Rehearing and Rehearing En Banc March 12, 1993.

David A. Hodges, Little Rock, AR, argued, for appellants.

Heidi Weckwert, Dept. of Justice, Washington, DC, argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

BOWMAN, Circuit Judge.

Reba J. Richardson and Phillip Layton appeal from summary judgments entered in the United States District Court for the Western District of Arkansas[1] in favor of the United States. Richardson and Layton argue that the District Court erred in holding that their claims are barred by the discretionary function exception to the Federal Tort Claims Act. For the reasons set forth below, we affirm.

These cases arise out of two separate tree-felling accidents which occurred in the Ozark–St. Francis National Forest. The Forest Service, which is responsible for the administration of the forest, awarded Eddy Heydenreich a contract to cull certain trees. Ronnie Richardson, an employee of Heydenreich, was killed when a beech tree he was felling came down on him. Because Heydenreich did not wish to continue work on the contract after this accident, a novation agreement was executed between the Forest Service, Jimmy Baysinger, and Heydenreich transferring Heydenreich's rights and responsibilities under the timber-cutting contract to Baysinger. Subsequently, Phillip Layton, one of Baysinger's employees, was seriously injured when a limb of a gum tree he was felling separated from the main portion of the falling tree and struck him.

Richardson's widow, Reba J. Richardson, and Layton filed separate lawsuits against the government under the Federal Tort Claims Act. These suits alleged myriad grounds of negligence on the part of the Forest Service. Essentially, plaintiffs alleged that the Forest Service was negligent or acted wrongfully in: 1) selecting contractors unable to perform the work safely; 2) selecting which trees were to be treated and the methods of treating them; 3) failing to adequately supervise performance of the work and compliance with safety regu-

---

1. The Honorable Morris Sheppard Arnold, United States District Judge for the Western District of Arkansas. On May 26, 1992, Morris Sheppard Arnold became a United States Circuit Judge for the Eighth Circuit Court of Appeals.

lations; 4) failing to provide, or to require that contractors provide, workers' compensation insurance; and 5) failing to warn of the dangers involved in the work.

The United States moved to dismiss the suits for lack of subject matter jurisdiction. The District Court converted the motions to dismiss into motions for summary judgment and granted both motions. On appeal, we held that the trial judge had erred in converting the motions to dismiss into motions for summary judgment without giving plaintiffs an opportunity to respond. *Layton v. United States*, 919 .F.2d 1333 (8th Cir.1990). On remand, the United States filed motions to dismiss or in the alternative for summary judgment in each action. The District Court granted summary judgment for the United States in both cases, holding that the actions were barred by the discretionary function exception. *Richardson v. United States*, 776 F.Supp. 1373 (W.D.Ark.1991) (the District Court's unpublished decision in Layton's case is substantially identical to this decision). Richardson and Layton bring their appeals, which we have consolidated.

■ The Federal Rules of Civil Procedure authorize the entry of summary judgment when the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The standard for summary judgment parallels that for a directed verdict. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). We review the granting of a summary judgment de novo. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992). With these standards in mind, we first review the scope of the discretionary function exception, then examine in detail the decision-making process of the Forest Service as it applies to the facts of this case, and finally analyze the applicability of the discretionary function exception to this case.

## I.

The Federal Tort Claims Act waives the sovereign immunity of the United States and makes it liable "respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1988). The Act, however, provides a number of exceptions in which suit against the United States is not authorized. Among these is the discretionary function exception that bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part ·of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (1988).

■ A line of Supreme Court cases interpreting the discretionary function exception explains the purpose behind, and the boundaries of, the exception. *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *United States v. Gaubert*, — U.S. —, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The exception exists to protect the "discretion of the executive or the administrator to act according to one's judgment of the best course," *Dalehite*, 346 U.S. at 34, 73 S.Ct. at 967, and to prevent "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy," *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2765. Thus, in order for the discretionary function exception to apply, the challenged governmental action must be the product of judgment or choice, and that judgment or choice must be based on considerations of social, economic, and political policy. *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. at 1958–59.

■ Where a statute, regulation, or policy prescribes a course of action to be

followed by a government employee, the employee does not have discretion to violate the regulation; actions in contravention of the regulation are not protected by the discretionary function exception. *Id.* Where conduct is not so prescribed, however, the Supreme Court has repeatedly said that it is the "nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *E.g., Varig Airlines,* 467 U.S. at 813, 104 S.Ct. at 2764. In other words, the fact that determinations are made at a relatively low level does not prevent the applicability of the exception. *Gaubert,* 111 S.Ct. at 1279 ("the routine or frequent nature of a decision" does not remove it from the scope of the discretionary function exception). Moreover, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* at 1274.

## II.

The United States Forest Service manages 190 million acres of national forestland throughout the country. Its mission is to administer the forests in a way that protects and improves them, while also promoting recreation and the production of timber. There are four levels of hierarchy in the Forest Service: national headquarters in Washington, D.C.; nine regional offices across the country; 123 forest offices within the nine regional offices; and district offices within each forest. The events underlying this case took place in Buffalo Ranger District of the Ozark–St. Francis National Forest. The latter is one of the 123 national forests and comprises 1.2 million acres.

One practice engaged in by the Forest Service is the culling of undesirable trees in order to promote the growth of more valuable timber. Because the Forest Service manages widely differing forestlands, no uniform set of regulations governs the culling of trees throughout the country.

Rather, decisions regarding the culling of timber are made at a local level. A silviculturalist within each district determines which stands of trees require treatment. The silviculturalist is guided by his own professional judgment in making this decision.

Other professionals, including foresters and timber markers, assist in developing the details of the treatment to be applied to each stand of trees, including which trees are to be treated and how they are to be treated. Treatment options include felling trees, girdling them (cutting a ring around their bark and thus killing them), or injecting them with poison. Ultimately, timber markers select and mark the particular trees to be treated. Like the silviculturalist, these other Forest Service employees are guided in their decisionmaking by their judgment and experience rather than by precise regulations.

The Forest Service typically uses outside contractors for the actual treatment of trees because it has limited manpower and expertise. Decisions regarding the selection of contractors are made by the contracting officer for a forest, and involve consideration of the contractor's expertise, his safety record, his availability, and the amount of his bid. Once a contract has been awarded, a contracting officer's representative (COR) oversees performance of the contract. The COR is responsible for performing inspections to ensure that the contractor is meeting contract specifications.

The frequency and thoroughness of a COR's inspections vary based on his prior experience with the contractor, the contractor's expertise, the contractor's safety record, the nature of the job, and the number of other contracts for which the COR is responsible. The COR is guided in performing his job by the Forest Service's Contract Administration Handbook. This handbook contains, among other things, a section on safety that provides:

1. The COR shall not ignore obvious safety hazards or violations. If the violation or hazard presents imminent

threat of serious injury, the COR shall point them [sic] out to the Contractor.
2. Persistent violations or any serious violations shall be reported to the Contracting Officer.

United States Department of Agriculture, Forest Service, *Contract Administration Handbook,* § 28 (1981).

The contract at issue in this case was for the culling of 356 acres of land in the Buffalo Ranger District of the Ozark–St. Francis National Forest. As described above, Forest Service employees selected which trees were to be treated and the method of treating trees. Forest Service timber markers marked the trees to be treated. The contract provided that, "Only those trees marked with paint on the lower two feet of their stems should be treated." Forest Service Contract § 210 [hereinafter Contract]. It required that, "All black gum, sweet gum, and American Beech marked for treatment will be felled. All other trees marked for treatment will be completely girdled...." Contract § 220. As concerns safety, the contract provided:

52.236–7 PERMITS AND RESPONSIBILITIES (APR 1984)

The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence, and shall take proper safety and health precautions to protect the work, the workers, the public, and the property of others.

. . . .

52.236–13 ACCIDENT PREVENTION (APR 1984)

(a) In performing this contract, the Contractor shall provide for protecting the lives and health of employees and other persons; preventing damage to property, materials, supplies, and equipment; and avoiding work interruptions.

. . . .

(d) The Contracting Officer shall notify the Contractor of any noncompliance with these requirements and of the corrective action required.... After receiving the notice, the Contractor shall immediately take corrective action.

Contract §§ 52.236–7, –13.

The contracting officer, John Odom, selected Heydenreich from among five bidders based on his previous experience with Heydenreich and based on Heydenreich's expertise and availability and on the amount of his bid. The COR, George Edgmon, met with Heydenreich at the work site on September 22, 1986, before Heydenreich commenced work. Edgmon's affidavit states that he warned Heydenreich of the danger involved in cutting down the beech and gum trees, telling Heydenreich that some of these trees were hollow or rotten and thus prone to splinter when felled. Heydenreich's affidavit denies that he received any such warning from Edgmon. Edgmon inspected the work site on September 23 and observed no unsafe practices; Edgmon was not present at the site on September 24 when Richardson was killed.

Following Richardson's death, and given Heydenreich's desire to withdraw from the culling, Odom selected Baysinger to complete the contract. Odom's selection of Baysinger was based on the same factors as those originally used to select Heydenreich. Edgmon met with Baysinger regarding the job, and warned him of the dangers involved, before Baysinger began work on the contract. Again, Edgmon observed no unsafe practices at the work site during the time he was present; Edgmon was not present on the day Layton was injured.

III.

█ Plaintiffs' first claim is that the Forest Service acted negligently or wrongfully in selecting contractors who were unable to perform safely the work involved. However, no mandatory regulations exist to guide a contracting officer in his choice between various bidders for timber-cutting contracts. Rather, the selection of contractors requires that the contracting officer choose

between contractors. This choice is grounded in policy since the contracting officer considers bidders' expertise, their safety records, and the amount of their bids in making the selection. The selection of contractors is clearly a discretionary function within the scope of the discretionary function exception. *See McMichael v. United States*, 751 F.2d 303, 307 (8th Cir. 1985) (decision to award a contract to a particular contractor involves weighing various considerations and is therefore protected by the discretionary function exception).

■ The second basis on which plaintiffs seek to impose liability on the United States is by arguing that the Forest Service was negligent or acted wrongfully in selecting the particular trees to be treated and the methods of treatment. Specifically, plaintiffs argue that the Forest Service should not have cut down trees on as steep a slope as that where the accidents occurred since the steepness of the slope made it impossible for workers to evade falling trees, that the Forest Service should have girdled all trees rather than cutting down gum and beech trees, and that the Forest Service should not have ordered trees cut as close to the ground as it did.

The record clearly establishes that no mandatory guidelines govern tree culling. Instead, because of the widely varying nature of forestlands throughout the country, the Forest Service delegates decisionmaking regarding treatment of forestlands to the local level. District-level silviculturalists, foresters, and timber markers all rely on their experience and judgment in making decisions regarding which stands of trees and which individual trees need treatment in order to further the Forest Service's policy of improving timber quality, and in deciding which treatment methods will best serve those goals.

Forest Service personnel in this case concluded that the particular stands of trees at issue required treatment in order to further the goal of improving timber quality, that girdling was an ineffective method of killing beech and gum trees, and that such trees should be felled close to the ground.

Whether these employees were negligent in making any of these decisions is irrelevant. The decisions made by Forest Service personnel were independent choices grounded in policy; they fall within the protection of the discretionary function exception. *See Gaubert*, 111 S.Ct. at 1279 (finding that decisions seeking to promote agency goals were based on public policy considerations and fell within the discretionary function exception).

■ Plaintiffs' third claim is that the Forest Service was negligent or acted wrongfully in failing to adequately supervise performance of the work and compliance with safety regulations. This claim is barred by the Supreme Court's decision in *Varig Airlines*. That case arose out of an airplane accident caused by a design defect in an aircraft. The FAA, in balancing safety and cost considerations, had placed primary testing and inspection responsibility on manufacturers and only spot-checked manufacturers' submissions of test results. The FAA had not inspected the particular design element at issue and had approved the design despite the fact that it violated FAA regulations. The Court held that the FAA's decision to place primary safety responsibility on manufacturers, and FAA inspectors' actions under the spot-checking system, fell within the discretionary function exception.

Similarly, in this case, the Forest Service delegated primary responsibility for safety to its contractors. The contract in this case required that the contractor "provide for protecting the lives and health of employees." Contract § 52.236–13. Although the Forest Service retained the right to notify contractors of noncompliance with safety requirements and to require correction of violations, the record establishes that the Forest Service did not supervise compliance with each and every safety requirement, but rather relied on spot-checking by its employees. The degree of supervision and the thoroughness of inspections were left to the judgment of individual CORs who looked to prior experience with a particular contractor and to the nature of the work being performed in deciding how often and how thoroughly to inspect contract sites. As in *Varig Airlines*, this spot-checking

system balanced safety considerations against cost. The Forest Service's adoption of the system is an exercise of policy judgment protected by the discretionary function exception.

■ The actions of the government inspector in this case are also protected by the discretionary function exception. In deciding how thoroughly to inspect the work site, Edgmon acted within the scope of discretion delegated to him under the inspection system. Edgmon's affidavit states that he based the frequency and scope of his inspections on his prior experience with the contractors at issue, their expertise, their safety records, the nature of the job, and his other responsibilities. His decisions clearly were the product of policy judgment. We note that this case is unlike cases in which a government inspector is controlled by precise regulations establishing specific steps he is required to perform in his inspections. *See, e.g., McMichael v. United States*, 856 F.2d 1026 (8th Cir.1988) (where government inspector was given a 51–step checklist to follow, and where his failure to execute the sixteenth item on this list caused plaintiff's injury, the inspector was not exercising policy judgment protected by the discretionary function exception).

Plaintiffs point to the contractual term providing that the contracting officer shall notify the contractor of noncompliance with safety requirements, and to the handbook provision stating that the COR shall not ignore obvious safety violations, to support their argument that the Forest Service had no choice but to enforce safety rules. However, those provisions in no way undercut the argument that government inspectors had discretion regarding how thoroughly to inspect contractor performance. In *Judy v. United States Department of Labor*, 864 F.2d 83 (8th Cir.1988), we held that regulations requiring government inspectors to issue a citation if they detected a violation only applied if the inspector *first* concluded there was a safety violation. In the instant case, Edgmon's affidavit expressly denies that he ever noticed any safety violations, and plaintiffs produced no evidence to the contrary. In sum,

both the decision of the Forest Service to delegate primary safety responsibility to contractors and to perform only spot-checks, and Edgmon's actions in inspecting the performance of the contractors at issue, were the products of choices grounded in policy; they fall within the discretionary function exception.

■ Plaintiffs' fourth claim is that the Forest Service acted negligently or wrongfully in failing to provide, or to require that Heydenreich and Baysinger provide, workers' compensation insurance. Assuming *arguendo* that Arkansas law required that Richardson and Heydenreich be covered by such insurance, there is nothing in the record to suggest any obligation on the part of the Forest Service to provide the coverage itself. The contract in this case clearly stated that the contractor was responsible "for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work." The Forest Service thus delegated the responsibility for providing any state-required insurance coverage to its contractors. The Forest Service contracts for timber-cutting services in order to take advantage of contractors' expertise and because of the Forest Service's own limited manpower. The decision to contractually delegate to contractors the responsibility for legal compliance, including providing workers' compensation insurance where required by law, is consistent with the Forest Service's policy of relying on contractors' expertise and preserving agency manpower, and it clearly represents a choice grounded in policy.

■ Nor can plaintiffs prevail on a claim that the Forest Service should have better monitored Heydenreich and Baysinger to ensure that they were carrying workers' compensation insurance. As explained above, the Forest Service has adopted a spot-checking system of enforcing contractual compliance. Both the adoption of this system and the acts of Forest Service employees under the system are the product of policy judgment. Nothing in the record suggests that any Forest Service employee was aware that Heydenreich and Baysinger did not have legally required workers'

compensation insurance so as to trigger handbook and contractual provisions requiring notice to the contractors and corrective action. Like the Forest Service's delegation to contractors of the responsibility to carry workers' compensation insurance, the Forest Service's failure to discover its contractors' noncompliance with state law is protected under the discretionary function exception.

 The dissent points to various provisions of the Service Contract Act of 1965, 41 U.S.C. §§ 351–358 (1982) (as amended), and of the Federal Acquisition Regulation, 48 C.F.R. ch. 1 (1986), to support an argument that Forest Service employees lacked discretion to enter into a contract without specifically requiring insurance coverage. The effect, even the existence, of these regulations was not raised by plaintiffs in the District Court, in their briefs on appeal, or at oral argument. It is not clear how the requirements of the regulations would mesh with the discretionary function doctrine, nor is it clear whether the types of insurance legally required under 48 C.F.R. § 28.307–2 (1986) would have provided coverage for Richardson's and Layton's accidents. It would be improper for us to address the issues raised by these regulations on appeal, on our own motion, without briefing or argument by the parties, *see Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976), and accordingly we decline to do so.

 Plaintiffs' fifth claim of wrongful or negligent activity on the part of the Forest Service concerns the alleged failure of the Forest Service to warn the contractors of the dangers of felling beech and gum trees. As noted above, the evidence is disputed regarding whether Heydenreich received a warning; the parties agree that Baysinger was warned prior to commencing work. Whether or not any warning was issued to Heydenreich, however, is immaterial. In *Bacon v. United States,* 810 F.2d 827 (8th Cir.1987), we were presented with a case in which the city of Times Beach hired a contractor to do roadwork for a block grant the city had received from the Department of Housing and Urban De-

velopment (HUD). While this work was being done, the Environmental Protection Agency (EPA) conducted tests for dioxin in Times Beach. Neither HUD nor the EPA provided any warning regarding the dioxin to the contractor. Employees of the contractor brought suit against the government based on the failures of these two agencies to warn them of the dioxin contamination. We held in the government's favor, reasoning that, where there is no regulatory requirement to issue a warning, the government may decide whether or not to warn persons as a matter of its own discretion. We concluded that the suit therefore was barred by the discretionary function exception.

The same logic applies in this case. The Forest Service, which delegated primary safety responsibility to the contractors, was not bound by any regulations or rules requiring it to issue warnings to contractors. Forest Service personnel might decide to issue warnings, or they might decide to refrain from doing so and to rely instead on the expertise of contractors who were presumably familiar with the dangers involved in timber-cutting in any case. (The record in this case shows that, whether or not he was warned, Heydenreich was aware of the particular dangers involved in felling gum and beech trees.) The decision as to whether or not to issue warnings is susceptible to policy analysis, since it involves balancing safety against cost: the more effort the Forest Service expended to discover dangers and to warn contractors of them, the greater the safety benefit but also the greater the cost to the government. *See Gaubert,* 111 S.Ct. at 1275 (the issue is not the agent's subjective intent, but rather the nature of the actions taken and whether they are susceptible of policy analysis). Even if Forest Service personnel failed to issue appropriate warnings to the contractors, plaintiffs' claim based on this failure is barred by the discretionary function exception.

Plaintiffs have cited several cases from other circuits in which the government's failure to issue a warning was held not to be a discretionary function. *See Andru-*

*lonis v. United States,* 924 F.2d 1210 (2d Cir.), *vacated,* —— U.S. ——, 112 S.Ct. 39, 116 L.Ed.2d 18 *reinstated,* 952 F.2d 652 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2992, 120 L.Ed.2d 869 (1992); *Summers v. United States,* 905 F.2d 1212 (9th Cir.1990); *Boyd v. United States ex rel. United States Army, Corps of Eng'rs,* 881 F.2d 895 (10th Cir.1989). We note that these cases did not involve situations in which the government hired a contractor to perform work. Instead, *Andrulonis* involved the Center for Disease Control's failure to warn a researcher performing a study jointly conducted by the Center and by the New York Department of Health; *Summers* and *Boyd* involved the government's failure to warn members of the public using land managed by the government. The rationale for each of the decisions was that no consideration of competing values was implicated in the government's decision not to issue a warning, so that it was simple negligence for the government to fail to issue a warning. We do not believe that this rationale applies to a situation such as that in the present case where the Forest Service delegated primary responsibility for safety to a contractor with expertise concerning the dangers involved in the work, and where the Forest Service then had to decide how closely to oversee the work.

Plaintiffs also argue that *Caplan v. United States,* 877 F.2d 1314 (6th Cir.1989), which was based on very similar facts to those in the instant case, supports a finding that failure to issue a warning is not protected by the discretionary function exception. The *Caplan* case arose from a timber-cutting accident in which a contractor was killed when a dead tree, which the Forest Service had previously injected with poison, fell on him. The court held that the Forest Service's relevant policy decision was to deforest the area, that once this decision had been made the government still had a duty to proceed with due care, and that the standard of due care required a warning to the contractor. We believe that to reach a similar result in this case would be inconsistent with our result in *Bacon,* which is the law of this Circuit and

which controls our decision. It would also be inconsistent with the record in this case. As the *Andrulonis* court stated, when the steps in the execution of a policy choice also require policy judgments, they too are protected by the discretionary function exception. 924 F.2d at 1219. The Forest Service's policy choices in this case did not cease with the decision to treat certain stands of timber. The Forest Service made numerous subsequent policy choices in order to implement its initial decision, including deciding how thoroughly to warn the contractors to whom primary responsibility for safety had been delegated of the dangers inherent in the work they were to perform. These decisions are protected by the discretionary function exception.

## IV.

In conclusion, plaintiffs' claims all are barred by the discretionary function exception. No material facts are in dispute, and on this record the government is entitled to judgment as a matter of law. The District Court therefore was correct in granting the government's motion for summary judgment, and that court's decision is affirmed.

HEANEY, Senior Circuit Judge, dissenting:

I respectfully dissent. While I agree with the majority that the forest service exercises protected discretionary functions when it determines the means and manner of managing the national forests, selects contractors to assist in that task, and supervises the performance of the work, I part company with my brethren when this court affirms as a protected discretionary governmental function the forest service's practice of hiring cheap, uninsured labor to do the most dangerous of the work.

This disturbing case involves an agency of the United States Government contracting a small-time operator to carry out what the government admits was manifestly dangerous work—without requiring the standard security of accident insurance afforded to other employees of the government. The record suggests the contracting agent knew the contractor had no insurance, knew the work was hazardous, and

yet hired the labor to carry out the job at a price that precluded even the possibility of purchasing workers' compensation coverage. The result I cannot sanction as proper: one man is now dead and another paralyzed, and neither man's family can hope to recover some compensation for the devastating loss because the government denies any responsibility.

In two terse paragraphs the majority affirms the summary judgment of the district court on the plaintiffs' claim of negligence for failure to require workers' compensation coverage. In my judgment, it is setting very bad precedent to affirm this course of government conduct as a legitimate exercise of discretion. It is an invitation to irresponsible branches of government to contract out for cheap, uninsured labor whenever dangerous work needs to be done.

Apart from the distressing factual nature of the case, I believe the majority errs—and that the district court erred also—in so quickly concluding that the contracting officer exercised a discretionary function when he entered into a contract for the performance of dangerous services on a government installation without first requiring insurance coverage. The majority casts the issue merely as whether the forest service exercised discretion when failing to enforce the contractor's compliance with state law—compliance generically required by the contract. The real issue, however, is whether the forest service had discretion to enter into such a contract in the first place without specifically requiring insurance coverage. The majority would hold that if Arkansas law did not require workers' compensation coverage, there was no independent obligation for the forest service to require the insurance; and that if Arkansas law did require the insurance, there was no government obligation to verify coverage before signing the contract. I disagree.

The Service Contract Act of 1965, 41 U.S.C. §§ 351–358 (1982), requires every service contract entered into by the United States in excess of $2,500, with exceptions not here relevant, to include those fringe benefits prevailing for such employees in the locality, including "compensation for injuries or illness resulting from occupational activity, or insurance to provide ... the foregoing, life insurance, [and] accident insurance...." *Id.* at § 351(a); *see also* 48 C.F.R. § 22.1002–1 (1991) ("Service contracts over $2,500 *shall* contain mandatory provisions regarding minimum wages and fringe benefits, [and] safe and sanitary working conditions...." (emphasis added)).

The Federal Acquisition Regulations (FAR) also express significant concern for the provision of insurance coverage in most government contracts, and not only require compliance with applicable federal, state, and local regulations, but also explicitly require insurance coverage in certain contracts. *See, e.g.,* 48 C.F.R. § 28.301(b) (1991) ("Contractors ... are required by law and this regulation to provide insurance for certain types of perils (e.g. workers' compensation)."); 48 C.F.R. § 28.307–2(a) (1991) ("Contractors are required to comply with applicable Federal and State workers' compensation and occupational disease statutes.... Employer's liability coverage of at least $100,000 *shall be* required, except in States with exclusive or monopolistic funds that do not permit workers' compensation to be written by private carriers." (emphasis added)); 48 C.F.R. § 28.307–2(b) (1991) ("The contracting officer *shall* require bodily injury liability insurance coverage written on the comprehensive form of policy of at least $500,-000 per occurrence." (emphasis added)).

The FAR also require the contracting officer to ensure the lawfulness and integrity of the contract before entering into it. 48 C.F.R. § 37.103(a) (1991) ("The contracting officer is responsible for ensuring that a proposed contract for services is proper."); 48 C.F.R. § 1.602–1(b) (1991) ("*No contract shall be entered into* unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures, including clearances and approvals, have been met." (emphasis added)).

This is not a situation like that described in *Varig Airlines* in which a government agency exercises discretion to spot check a contractor's compliance with a regulatory scheme. In this case, the government con-

tracting officer should never have entered into the contract in the first place. He not only abused discretion by letting out a contract to do especially dangerous work to a low-bidding contractor who had no insurance, but also did so at a contract price that precluded obtaining the insurance, and disregarded relevant regulations in the process.

In my judgment, the contracting officer had no discretion to enter into this contract without requiring workers' compensation insurance coverage. Because the contracting officer had no such discretion, the district court erred in granting summary judgment based on the discretionary function exemption to the Federal Tort Claims Act. I would remand this case to the district court to determine if Arkansas courts recognize an appropriate cause of action based on these facts.

### Order Denying Petition for Rehearing and Suggestion for Rehearing En Banc

The suggestions for rehearing en banc are denied. Judge McMillian would grant the suggestions.

The petitions for rehearing by the panel are also denied.

Judge John R. Gibson and Judge Morris S. Arnold took no part in the consideration or decision of this case.