# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2001

_____

Mary Ann Metter, as Personal Representative of the Estate of Edward O. Metter, Deceased

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*

_____

No. 14-2002

_____

Justin Erickson and Jennifer Erickson, Husband and Wife

*Plaintiffs - Appellants*

v.

United States of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska

_____

Submitted: February 13, 2015
Filed: May 11, 2015

_____

Before RILEY, Chief Judge, LOKEN and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

On October 9, 2011, while fishing with his son-in-law and grandson near Gavins Point Dam on the Missouri River in Cedar County, Nebraska, Edward Metter was tragically struck and killed when a parked pickup truck came out of gear and rolled down an unprotected river bank. Mary Ann Metter, Metter's widow and personal representative of his estate, brought survival and wrongful death actions under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-2680, against the U.S. Army Corps of Engineers (Corps), asserting the Corps negligently maintained the site. The grandson, Justin Erickson, and his wife, Jennifer Erickson, brought a separate suit against the Corps raising the same theories of liability for the mental and physical harms to Justin caused by witnessing his grandfather's death and any losses suffered by Jennifer. The Corps filed a motion to dismiss, or in the alternative, for summary judgment. The district court[1] granted the Corps' motion to dismiss the claims under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, finding (1) the claims were barred by the FTCA's discretionary function exception, and (2) the United States did not waive sovereign immunity.[2] Mary Ann and the Ericksons (collectively, appellants) appeal. We affirm.

_____

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

[2]The district court also granted the Corps' motion to substitute the United States as defendant. See Duncan v. Dep't of Labor, 313 F.3d 445, 447 (8th Cir. 2002) (per curiam).

## I.     BACKGROUND

A popular spot for fishing, Gavins Point Dam, lake, and associated facilities are operated and managed by the Omaha District of the Corps.  Guardrails line most of the parking areas along Training Dike Road where Metter was killed.  Due to historic flooding beginning in May 2011, the Corps removed two sections of guardrail in June 2011 to allow heavy equipment access to the river shoreline and to facilitate ongoing flood-related repairs, closing these areas for public use.  David Becker, the Corps' Operations Project Manager, inspected the remaining wooden guardrail posts and determined they needed to be replaced.  On August 30, 2011, the Corps hired C.B.M.C., a Tennessee contractor, to install new guardrail posts by September 30, 2011.

On September 19, C.B.M.C. assured the Corps it would complete the project the following week.  In an attempt to reduce contract costs and meet the planned September 30 deadline, Corps personnel removed the remaining guardrails and posts on September 28.  Becker testified the Corps reopened the area along the river to the public, but did not post parking restrictions or public advisories because he believed removal of the guardrails did not endanger the public.  Despite the Corps' repeated attempts to contact C.B.M.C. between September 26 and October 7, C.B.M.C. did not perform as promised.  The fatal accident occurred on October 9, before the Corps terminated C.B.M.C.'s contract and re-awarded the project to another contractor. The new contractor replaced the guardrails before November 30.

The appellants brought suit against the Corps under the FTCA, alleging the accident occurred as a result of the Corps' negligence in failing to (1) "timely replace the guardrail and posts along the parking area on Training Dike Road," (2) "make a reasonable inspection of the parking area," (3) "maintain a reasonably safe parking area," and (4) "warn[ ] the public of the hazardous condition that existed on the parking area."  The Corps moved to dismiss the case on jurisdictional grounds, arguing its decisions relating to the removal and re-installation of the guardrails were

protected by the discretionary function exception to the FTCA. The district court agreed and granted the motion, and appellants appeal.

## II. DISCUSSION

"It is well settled that the United States may not be sued without its consent," Hinsley v. Standing Rock Child Protective Servs., 516 F.3d 668, 671 (8th Cir. 2008), but under the FTCA, an injured party can hold the United States liable in tort

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, 28 U.S.C. § 2680(a)—commonly referred to as the discretionary function exception to the FTCA—prohibits "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

A two-part test determines when the discretionary function exception applies. First, the agency action must "'involv[e] an element of judgment or choice.'" United States v. Gaubert, 499 U.S. 315, 322 (1991) (alteration in original) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). Second, we must "decide[ ] 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" Id. at 322-23 (quoting Berkovitz, 486 U.S. at 536). "'[I]t is the nature of the conduct'" and whether the conduct is "susceptible to policy analysis" "'rather than the status of the actor that governs whether the exception applies.'" Id. at 325 (alteration in original) (quoting Varig Airlines v. United States, 467 U.S. 797, 813 (1984)). "[T]he exception 'protects only governmental actions and decisions based

-4-

on considerations of public policy,'" and there is a rebuttable presumption that the government "agent's acts are grounded in policy" "[w]hen established governmental policy . . . allows [the] agent to exercise discretion." Id. at 323-24 (quoting Berkovitz, 486 U.S. at 537); see also Audio Odyssey, Ltd. v. United States, 255 F.3d 512, 519 (8th Cir. 2001); Dykstra v. U.S. Bureau of Prisons, 140 F.3d 791, 795-96 (8th Cir. 1998).

"We review de novo a district court's grant of a motion to dismiss under the discretionary function exception to the FTCA." Dykstra, 140 F.3d at 795.

Appellants "concede that there was an 'element of choice' in the [Corps'] actions," but propose that after the Corps decided to replace the guardrails, "it [was] no longer exercising a discretionary policy-making function" that was "'susceptible to policy analysis'" and should be required to follow through "in a non-negligent manner." (Quoting Gaubert, 499 U.S. at 322, 325). We must decide whether the Corps' decision—to remove the guardrails and not post warning signs—is "susceptible to policy analysis." We conclude it is.

## A. Corps' Actions Were Discretionary

Becker testified two regulations in chapter 3 of the Corps' Engineering Manual 1110-2-410 (Manual) were "relevant to the siting of parking areas . . . and the necessity of guardrails or other railings at or near parking areas." The first provision, paragraph 3-3(a)(1), provides, in relevant part:

> Overlooks and their support facilities should be sited on gently sloping terrain. The area where the entrance, exit and parking facilities will be located should not exceed 7 percent grades and the section of roadway passing the potential site should not exceed 5 percent grade.

The second provision, paragraph 3-3(a)(2), provides, in relevant part:

Precipitous drop offs should be made safe by the provision of appropriate railing.

We agree with the district court that nothing in the Manual prescribes "a specific, mandatory duty upon the Corps to install or maintain (or to not remove) guardrails, to provide warnings, or to restrict parking" applicable to Training Dike Road. We also agree that "[t]he use of permissive language, rather than mandatory terms, such as 'must' or 'shall,' shows that these [Manual] provisions are merely guidelines." Becker described the slope of the embankment from the road to the river as "not precipitous" at the site of the accident. The decision to replace the guardrails was made in the context of the operation of a much larger project—the Corps' duty to maintain the associated recreation areas and facilities—and the Corps had authority to decide how to best effectuate those duties.

### B.     Susceptible to Policy Analysis

In deciding whether the nature of the Corps' actions is "susceptible to policy analysis," "[t]he focus of the inquiry is not on the agent's subjective intent." Gaubert, 499 U.S. at 325. Rather, we look to whether the decision being challenged is "grounded in social, economic, or political policy." Id. at 323.

Looking first at appellants' contention that the Corps' failure to warn was not a public policy decision, we find guidance in Layton v. United States, 984 F.2d 1496 (8th Cir. 1993). In Layton, we concluded the United States Forest Service's "decision whether or not to issue warnings [was] susceptible to policy analysis [because] it involve[d] balancing safety against cost: the more effort the Forest Service expended to discover dangers and warn contractors of them, the greater the safety benefit but also the greater the cost to the government." Id. at 1504-05; accord Hinsley, 516 F.3d at 673 ("[T]he decision to warn is, at its core, a policy decision."); Demery v. U.S. Dep't of Interior, 357 F.3d 830, 834 (8th Cir. 2004) (concluding the "decision . . .

-6-

whether to warn . . . is susceptible to a policy analysis" because it requires balancing interests like "increased safety . . . with . . . the cost of erecting warnings").

Appellants urge us to follow Cope v. Scott, 45 F.3d 445 (D.C. Cir. 1995), which held the discretionary function exception did not apply to the National Park Service's failure to warn adequately about the nature of a road surface because the Park Service could not "articulate how the placement of additional or different signs on Beach Drive implicates . . . economic, social, or political concerns." Id. at 452. The Park Service posted "no less than twenty-three traffic control, warning, and informational signs" on the section of road where an accident occurred, and there was no evidence that "engineering and aesthetic concerns" prevented the posting of additional warning signs. Id. at 451-52 (internal marks omitted). In Cope, the court found the Park Service had already made a specific policy decision to favor safety over aesthetics and this involved "engineering judgment" based on objective scientific principles not susceptible to policy analysis. Id. at 452. Our facts are different, and Cope is not binding. Appellants have not alleged or presented evidence to show the Corps had either adopted a safety policy or established priorities to guide the Corps' decisions in maintaining Training Dike Road and the facilities at Gavins Point Dam, and appellants have failed to rebut the presumption that the Corps' decision not to post warning signs was grounded in policy. See Gaubert, 499 U.S. at 323-24.

We next turn to appellants' proposition that the Corps' failure to replace the guardrails by a specific date was not itself a policy decision, but instead was a negligent failure to follow through on an earlier policy determination that the guardrails should be replaced. Appellants rely on Aslakson v. United States, 790 F.2d 688, 693 (8th Cir. 1986), for the proposition that "[w]here the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the [discretionary function] exception falls away." Appellants claim there is evidence

of an "established policy" of protecting the area where the accident occurred because "guardrails ha[d] been in place for at least thirty years." Appellants argue the "policy was reaffirmed when Mr. Becker determined that the deteriorating guardrails should be replaced" by September 30.

Unlike the government agency in Aslakson, whose "policy clearly required it to elevate its power lines if safety considerations compelled such action," id., there was no clear policy that bound the Corps to prioritize safety considerations or maintain guardrails. As the district court observed, "[t]he Corps could have decided to issue a binding policy," but chose not to.

We recognize a distinction between the Corps (1) exercising discretion and deciding to replace the guardrails, and (2) deciding to issue a regulation or forming a policy requiring the installation or maintenance of guardrails. Because the Corps had the discretion to decide if, how, and when to replace the guardrails, it had the discretion to alter its initial decision to replace the guardrails by September 30 when the first contractor failed to perform. See, e.g., Gaubert, 499 U.S. at 331 (deciding conduct of bank regulators did not "fall outside the discretionary function exception" when the conduct "involved the mere application of technical skills and business expertise . . . at the operational level" rather than at a policy-making level, because "the challenged actions involved the exercise of choice and judgment"); Shansky v. United States, 164 F.3d 688, 695 (1st Cir. 1999) (determining "[a]n agency that has discretion to make policy choices" can adjust the "balance of relevant concerns" over time, and when the "overall policy decision [is] protected by the discretionary function exception," the protection extends to "component" decisions).

More importantly, the Corps need not have made a "conscious decision regarding policy factors," so long as the decision to remove the guardrails was susceptible to a "balancing of public policy objectives." Kiehn v. United States, 984 F.2d. 1100, 1105 (10th Cir. 1993) (internal marks omitted). Here, as the district court

observed, the Corps had to "balance the overall purpose of Training Dike Road with the recreational uses of the area, the allocation of funds," the timing of repairs and maintenance work, "and the safety of drivers," anglers, and other users. The Corps removed the guardrails and posts itself to save money and to expedite the project—both reasons reflect the discretionary exercise of choice and judgment. When the first contractor, C.B.M.C., failed to perform in accordance with the September 30 schedule, the Corps exercised choice and judgment to retain a new contractor with a revised schedule, yet no guardrails were at the site on October 9, 2011. We conclude the Corps' discretionary actions were "susceptible to policy analysis" within the meaning of Gaubert.

## III.  CONCLUSION

We affirm the well-reasoned decision of the district court.

_____