# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-2047

_____

Carrie S. Willis, individually and as trustee of the Trust of James C. and Norma D. Willis

*Plaintiff - Appellee*

v.

Stephen Boyd; Jason Brushwood; Missouri Highway Patrol; Sergeant D Nash; The City of Farmington, New Mexico, doing business as Farmington Police Department; Detective Corporal Russell Bradford

*Defendants*

United States of America

*Defendant - Appellant*

Robert Jackson, IRS Special Agent, Individually and in his official capacity; Scott Wells, IRS Special Agent, Individually and in his official capacity

*Defendants*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: February 17, 2021
Filed: April 2, 2021

_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.

_____

ARNOLD, Circuit Judge.

This is a case of mistaken identity, though not of the usual kind. During the search of Carrie Willis's home, police seized a large number of coins and passed them along to the Internal Revenue Service. An IRS agent deposited the coins at their face value into an IRS account and later remitted the amount to Willis. She maintains the coins were collectors' items and so the agent was mistaken when he essentially swapped them for ordinary currency, greatly discounting their value, so she sued the government under the Federal Tort Claims Act for conversion. After a bench trial, the district court agreed and awarded Willis $94,880. The government appeals, arguing that the district court erred when it concluded that the FTCA had waived the government's sovereign immunity to suit in the current circumstances. We agree with the government and so reverse and remand.

According to the district court's findings of fact, which the parties do not challenge, the government seized 364 boxes of recently minted one-dollar coins commemorating deceased U.S. Presidents. Each box contained one thousand coins. An agent with the local IRS office took possession of them the day after they were seized and had them removed from their original packaging and processed through a coin counter, after which $364,000 was deposited into an IRS account. The agent admits that he did not make an effort to determine whether the coins had any numismatic value. A few years later, after Willis requested the coins' return, the IRS informed her they had been "converted to cash and deposited into the government's account." When the government then paid Willis the face value of the coins, she asserted they were worth a great deal more than that as collectors' items. This suit followed.

A person who sues the federal government must show that it has unequivocally waived its sovereign immunity from suit. *See Barnes v. United States*, 448 F.3d 1065, 1066 (8th Cir. 2006). The FTCA waives sovereign immunity in suits seeking money damages against the federal government "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b)(1); *see also Brownback v. King*, 141 S. Ct. 740, 746 (2021).

But the FTCA contains a number of exceptions to this general waiver of immunity. *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008). The so-called "discretionary-function exception" that the government relies on as a bar to this action applies when government agents make decisions that are discretionary in nature, that is, ones that involve "an element of judgment or choice." *See United States v. Gaubert*, 499 U.S. 315, 322 (1991). More specifically, the exception applies to any claim that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court has held, though, that the exception, despite its apparent breadth, does not insulate from suit every discretionary decision that a government agent makes; the decision must be "of the kind that the discretionary function exception was designed to shield." *See Gaubert*, 499 U.S. at 322–23. The Court has explained that, in enacting this exception, "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *See United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). So suppose, for example, that a government agent was driving a car on government business and negligently caused

an accident. While "driving requires the constant exercise of discretion," that's not the type of discretion that triggers the exception because the decisions the agent makes when exercising the discretion associated with driving a car are not grounded in government policy. *See Gaubert*, 499 U.S. at 325 n.7.

The upshot of these and other Supreme Court decisions is that we must answer two questions to determine if the exception applies. First, we ask "whether the challenged conduct or omission is 'truly discretionary'" in that "it involves an element of judgment or choice instead of being controlled by mandatory statutes or regulations." *See Buckler v. United States*, 919 F.3d 1038, 1045 (8th Cir. 2019). If it is, we consider whether the employee's judgment or choice could be "based on considerations of social, economic, and political policy." *Id.* If it could, the exception applies, and sovereign immunity bars the suit.

The parties vigorously dispute whether the agent's decision to send the coins for processing rather than to preserve them *in specie* was a matter that is "truly discretionary" or if it was mandated by laws or policies that the agent failed to follow. We agree with the government that the agent's decision was a discretionary one. The manual governing the actions of IRS agents provided, as relevant here, "that domestic and foreign currency seized for forfeiture, except where it is . . . held as a 'collectible asset,' must be expeditiously counted, processed, and deposited . . . within 5 days of seizure." *See* Internal Revenue Manual § 9.7.4.6.1(2); *see also id.* § 9.7.6.14.1(1). Willis's own expert agrees that neither that manual nor any other mandatory rule instructed an agent how to determine whether seized currency is a "collectible asset." That determination is left to the agent's discretion.

Willis asserts that the agent violated this manual provision by failing to investigate whether the coins had a special value to collectors. But that provision does not direct an agent to undertake an investigation. The agent satisfied the provision

when he determined that the coins were ordinary currency and had them expeditiously processed. Willis's argument misses the mark.

Willis maintains that some other provisions of the IRS manual required the agent to investigate whether the coins had collectors' value. For example, Willis faults the agent for failing to fulfill certain "pre-seizure planning" obligations, including a general obligation to consider and "realistic[ally] estimate" the value of seized property. *See id.* § 9.7.4.3.2(1). But the provision Willis cites never elaborates on the information an agent must obtain before making a realistic estimate. It never spells out when additional investigatory duties are triggered, or what an additional investigation might look like; rather, it apparently gives an agent discretion to determine whether seized currencies' face value is a realistic estimate of its worth or whether an investigation into its value as a collectible asset is needed and what it might entail.

Willis also points to provisions in the IRS manual relating to the storage of seized property and property appraisals. *See id.* §§ 9.7.6.9.2(1), 9.7.6.8(1), 9.7.6.8.1, 9.7.6.7.3. But those provisions do not guide agents in determining whether seized currency is collectible in the first place. At most, they tell agents how to handle coins like these should they conclude that the coins are collectibles. But as we've pointed out before, we may not ignore the discretion associated with an underlying, antecedent determination. *Buckler*, 919 F.3d at 1050.

We think this case is distinguishable from *Buckler* and *Appley Brothers v. United States*, 164 F.3d 1164 (8th Cir. 1999), two cases Willis invokes for the proposition that the discretionary-function exception does not apply when a government agent fails to perform a mandatory task requiring discretion to carry out. In *Buckler*, for example, a plaintiff sued a mine inspector who was obligated to review certain training records. 919 F.3d at 1054. Our court explained that, though the inspector had discretion in how to examine those records, he was obliged to

conduct at least some review, and so his alleged entire failure to do so did not trigger the discretionary-function exception. *See id.* Similarly, in *Appley Brothers*, a grain-warehouse inspector had discretion in how he carried out a mandatory grain inspection, and since the complaint centered on an allegation that the inspector conducted no inspection at all, rather than an allegation that the inspector had performed his obligations negligently, we held that the discretionary-function exception did not apply. 164 F.3d at 1172–73.

Here, however, the agent satisfied his mandatory obligation—he did not fail to decide whether the seized currency was ordinary currency or a collectible asset. He quite clearly decided that the coins were ordinary currency and so had them quickly processed. Though Willis argues that the IRS manual required him to do more, and that his failure to follow the manual was not discretionary, we do not think, as just explained, that the manual required the agent to do more than he did when he categorized the coins. Even if the decision was carelessly made or was uninformed, the agent's negligence in making it is irrelevant. *See Layton v. United States*, 984 F.2d 1496, 1502 (8th Cir. 1993). The decision was still discretionary.

That brings us to the second question we must answer—whether the agent's choice to treat these coins as ordinary currency could have been "based on considerations of social, economic, and political policy." When we've already determined that a government's choice was discretionary, as here, we presume that it was based on relevant policy considerations. *See Buckler*, 919 F.3d at 1046. We are not convinced that Willis has rebutted that presumption.

In rejecting the government's argument that the discretionary-function exception applied, the district court pointed out that the agent exercised no judgment because he never considered whether the coins had numismatic value, and so, presumably, there was never a balancing of any policy considerations. As our court has explained, however, it does not matter whether the agent actually "engaged in

conscious policy-balancing." What matters is whether the decision in question is by its nature as an objective matter "susceptible to policy analysis." *See Herden v. United States*, 726 F.3d 1042, 1047 (8th Cir. 2013) (en banc).

A decision is quite obviously susceptible to a policy analysis when it requires a federal employee to balance competing policy interests. *See id.* at 1050. One matter of policy at play in this case is the policy of expeditiously depositing seized currency. Once again, the manual required agents to count, process, and deposit seized currency within five days. *See* §§ 9.7.4.6.1(2), 9.7.6.14.1(1). A reason for this rule, the manual elaborated, is that "[t]he security, budgetary, and accounting problems associated with the seizure and retention of large amounts of cash creates great concern . . . and raises both financial management and internal control issues." *Id.* § 9.7.4.6.1(1). The manual to the Department of Justice's Asset Forfeiture Program, in which the IRS participates, echoes this concern and says that participating agencies "have held tens of thousands of dollars in office safes and other locations throughout the country. This raises both financial management and internal control issues. The Department must report annually to Congress on the amount of seized cash not on deposit." DOJ Asset Forfeiture Policy Manual ch. 2, pt. VI (previously codified at ch. 1, pt. IV). But agents acting in circumstances like the ones present here must also undertake reasonable efforts to preserve the value of seized property. The IRS manual requires that agents "strive to ensure that seized property is protected and its value preserved." Internal Revenue Manual Ex. 9.7.1-1(IX).

What this comes down to is that agents who seize currency must balance the competing interests of expeditious deposit on the one hand and preserving property on the other—a calculation that plainly involves questions of social, economic, and political policies as to which the IRS and DOJ have understandably professed "great concern." So we conclude that the agent's choice was "susceptible to policy analysis" in the relevant sense. *Cf. Metter v. United States*, 785 F.3d 1227, 1233 (8th Cir. 2015).

We therefore hold that the FTCA's discretionary-function exception applies, and so the government has not waived its sovereign immunity.

We reverse the judgment of the district court and remand for it to dismiss Willis's claim.

_____