# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1872
_____

Phillip Alberty

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: October 19, 2022
Filed: December 1, 2022
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Phillip Alberty sued the United States of America for injuries sustained from a fall on federal property. The district court[1] determined that Alberty's tort claim was barred by the discretionary-function exception to the Government's waiver of

---

[1] The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

sovereign immunity for tort claims. The district court therefore dismissed Alberty's suit for lack of subject-matter jurisdiction. We affirm.

## I.

In 2018, Alberty fell and suffered serious injuries as he was leaving the Neal Smith Federal Building in Des Moines, Iowa. Alberty is in his sixties and has a visual impairment.

The building's east exit, where Alberty fell, has concrete stairs leading down to a sidewalk. At the top of the stairs are four concrete bollards, each separated by a few feet of space. Running along either side of the stairs is a flat area, level with the top step. The parties refer to these areas as the "south walk" and the "north walk." The walks meet the sidewalk at a twenty-six-inch vertical drop.

As Alberty left the building, he noticed the concrete bollards. He presumed they were meant to deter pedestrians from proceeding past them. So he went around them, along the south walk. When he reached the end of the south walk, he fell onto the sidewalk below, breaking his leg and elbow. The injuries required two surgeries followed by several months of physical therapy.

Alberty brought a tort claim against the Government, alleging that it was negligent in designing and maintaining the paved walkway outside the building. He claims that the Government failed to use reasonable care to anticipate the danger to visitors, particularly those with impairments or disabilities. He asserts that the failure to erect barriers or railings or to provide identifying marks, textural cues, or other safety features for the south walk caused his injuries. These failures, Alberty alleges, violated federal policy. Specifically, he points to the General Services Administration's ("GSA") commitment to "making Federal buildings and facilities fully accessible to all people" and to "ensuring the full integration of individuals

-2-

with disabilities who use [government] facilities."[2]  He also asserts that the south-walk design violates the International Building Code ("IBC") requirements for stairs.  *See* IBC § 1009.7 (2012 ed.).

The Government moved to dismiss Alberty's claim for lack of subject-matter jurisdiction.  The Government argued that the discretionary-function exception to the Federal Tort Claims Act ("FTCA") bars Alberty's claim.  *See* 28 U.S.C. § 2680(a).  The district court granted the Government's motion, and Alberty appeals.

## II.

We review a dismissal for lack of subject-matter jurisdiction *de novo*.  *Metter v. United States*, 785 F.3d 1227, 1231 (8th Cir. 2015).  "The plaintiff bears the burden of proving the existence of subject matter jurisdiction."  *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (internal quotation marks omitted).  In conducting our review, we may look at materials outside the pleadings.  *Id.*

The FTCA "serves as a limited waiver of sovereign immunity, opening the door to state-law liability claims against the federal government for harm caused by government employees."  *Buckler*, 919 F.3d at 1044.  Specifically, it authorizes district courts to hear suits against the United States

> for money damages . . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).  One exception to this waiver involves discretionary functions performed by a government agent.  *See id.* § 2680(a).  Broadly speaking, the

---

[2]*See Accessible facility design*, https://www.gsa.gov/real-estate/design-construction/accessible-facility-design (last visited Nov. 22, 2022).

exception applies when the government's agent (here, the GSA) acts pursuant to its discretion and that discretion implicates policy considerations. *See United States v. Gaubert*, 499 U.S. 319, 322-23 (1991). The exception is a jurisdictional bar to suit. *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc).

We follow a two-step analysis to determine whether the discretionary-function exception applies. *Buckler*, 919 F.3d at 1045. First, we ask whether the challenged conduct or omission was truly discretionary, that is, "whether it involves an element of judgment or choice instead of being controlled by mandatory statutes or regulations." *Id.* (internal quotation marks omitted). Second, we ask "whether the government employee's judgment or choice was based on considerations of social, economic, and political policy." *Id.* (internal quotation marks omitted). The discretionary decision need only be "susceptible to policy analysis," regardless of whether the employee actually "engaged in conscious policy-balancing," *id.*, and regardless of "whether . . . the discretion involved [was] abused," 28 U.S.C. § 2680(a). There is a presumption that discretion is grounded in policy considerations, which the plaintiff must rebut. *Buckler*, 919 F.3d at 1046. Thus, to establish subject-matter jurisdiction, Alberty must show that either (1) the Government's decisions about the south-walk design did not involve an element of judgment or choice or (2) if the Government had such discretion, it was not grounded in policy considerations.

## A.

We first address whether the challenged conduct was truly discretionary. Alberty argues that it was not because federal rules and regulations mandated a safer walkway design. He alleges two constraints on the GSA's discretion. Neither is sufficient to overcome the jurisdictional bar.

One is from the GSA's website. Alberty alleges that the GSA holds itself out to be committed to "making Federal buildings and facilities fully accessible to all people" and "ensuring the full integration of individuals with disabilities" who use

-4-

government facilities. *See supra* note 2. Tellingly, Alberty refers to the website's language as a "commitment" but points to no statutes, regulations, or policies that delineate it. Without more, this commitment "lack[s] the required specificity and mandatory language" to strip government employees of discretion. *See Buckler*, 919 F.3d at 1048. In short, Alberty has not shown that the accessibility commitment is anything more than aspirational or a general principle. Whether and how to achieve it are discretionary decisions.

The second is the IBC. Alberty alleges that the south walk's vertical drop constitutes a "stair" in violation of IBC § 1009.7, which has to do with stairstep height. According to Alberty, the IBC applies to the south walk through 40 U.S.C. § 3312. Section 3312 generally requires that federal buildings comply with nationally recognized building codes. Specifically,

> [e]ach building constructed or altered by the [GSA] . . . shall be constructed or altered, to the maximum extent feasible as determined by the Administrator . . . , in compliance with one of the nationally recognized model building codes and with other applicable nationally recognized codes, including electrical codes, fire and life safety codes, and plumbing codes, as the Administrator decides is appropriate.

§ 3312(b).[3] Section 3312 "applies to any project for construction or alteration of a building for which amounts are first appropriated for a fiscal year beginning after September 30, 1989." § 3312(a)(1).

The district court determined that § 3312(b) did not apply because the Neal Smith Federal Building was built in 1967 so "amounts" must have been "first appropriated" long before the trigger date. In reaching that conclusion, the district court interpreted the appropriations condition to apply to "a building" rather than to "any *project* for construction or alteration." *See* § 3312(a)(1) (emphasis added). Alberty takes the latter view and asserts that the Neal Smith Federal Building's

---

[3]The Government concedes that the IBC is one such code.

exterior underwent significant alteration in 2003. We need not resolve this matter of statutory interpretation because even if § 3312(b) applies to the renovation, it still leaves significant discretion to the GSA regarding building code compliance.

Section 3312(b) is couched in discretion. "[T]o remove discretion from government employees, a regulation must be mandatory and it must clearly and specifically define what the employees are supposed to do." *See C.R.S v. United States*, 11 F.3d 791, 799 (8th Cir. 1993). But compliance with building codes is required only "to the maximum extent feasible as determined by the Administrator." § 3312(b). The "as determined by" language "fairly exudes deference" to the GSA. *Cf. North Dakota ex rel. Bd. of Univ. & Sch. Lands v. Yeutter*, 914 F.2d 1031, 1035 (8th Cir. 1990) (analyzing the agency-discretion exception to judicial review under the Administrative Procedure Act); *see also Cope v. Scott*, 45 F.3d 445, 450 (D.C. Cir. 1995) (describing the flexibility in implementing roadway-design standards "to the extent practicable" as the "essence of discretion"). Moreover, § 3312(b) does not even specify a particular building code. The Administrator presumably retains discretion not only over how to comply but over which code to comply with when codes conflict or deviate with one another. Because Alberty has not pointed to any statutes or mandatory regulations that sufficiently constrain the GSA's discretion over the building's design, he has failed the first step in overcoming the discretionary-function exception.

B.

Alberty can still prevail if he shows that the GSA's discretion was not "susceptible to policy analysis." *See Buckler*, 919 F.3d at 1045. He has failed to do so.

The design of the walkway—an integral component of the building's east exit and facade—is susceptible to policy analysis. It involves social, economic, and political policy considerations like public safety, cost of design and materials, and aesthetics. *See Metter*, 785 F.3d at 1232-33 (holding that the decision whether to

install guardrails near a fishing area was susceptible to policy analysis); *see also Fothergill v. United States*, 566 F.3d 248, 253 (1st Cir. 2009) (holding that whether to install curbs or barriers in a post-office parking lot and how to array them were choices susceptible to policy analysis).  Indeed, the GSA report that Alberty cites to show that the building's exterior was renovated in 2003 expressly states some of the policy considerations behind the decision.  *See* U.S. General Services Administration Office of the Chief Architect Center for Historic Buildings, *Growth, Efficiency, and Modernism*, 74 (2005) (discussing the building's renovation).[4]  The GSA sought "to remedy [water] leaks while also addressing aesthetic deficiencies in the building."  *Id.*  It solicited input from a local architectural review board and the broader community, with the goal of designing "a solution that would provide the necessary weather barrier and simultaneously provide a sleek new exterior form." *See id.*; *see also Cope*, 45 F.3d at 449 ("Evidence of the actual decision may be helpful in understanding whether the 'nature' of the decision implicated policy judgments . . . .").

As for the Government's decision not to place warnings for the south walk, it too is susceptible to policy analysis for similar reasons.  We have repeatedly characterized discretion over safety warnings "as susceptible to policy choice due to the need to balance safety against governmental efforts and costs and the need for professionals on the ground to adapt to the conditions they face in determining how to expend limited resources in the efforts to identify dangers."  *Buckler*, 919 F.3d at 1052; *see Metter*, 785 F.3d at 1232-33; *Demery v. U.S. Dep't of Interior*, 357 F.3d 830, 834 (8th Cir. 2004) (holding that the decisions of whether and how to warn about open-water portions of a frozen lake were susceptible to policy analysis).

Alberty argues that the decision not to warn about the south walk's danger involved only an "isolated, single location hazard" and therefore did not implicate public policy.  He relies on *Andrulonis v. United States*, 952 F.2d 652, 655 (2d Cir.

---

[4]Available at https://www.gsa.gov/cdnstatic/GEMbook.pdf.

1991), which involved the failure of a government scientist to warn another researcher about known dangers in their experiment. But *Andrulonis* is factually inapposite, just as it was in two of our earlier cases distinguishing it. In *C.R.S.*, for instance, we described the Military Blood Program Office's discretionary decision not to identify and warn thousands of military personnel across the country about HIV risks from past blood transfusions as "a far cry from the isolated need for a single warning [in *Andrulonis*]." 11 F.3d at 802. And in *Layton v. United States*, we contrasted the lack of competing policy considerations at play in *Andrulonis* with the ample policy considerations underlying the Forest Service's decision to implement only certain safety measures for forest maintenance. 984 F.2d 1496, 1504-05 (8th Cir. 1993). So although Alberty may have been a single individual who fell at a single location, the design and warnings (or lack thereof) of that location involved broader policy considerations affecting the broader public like safety, cost, and aesthetics. Simply put, this is not the case of an "isolated need for a single warning." *See C.R.S.*, 11 F.3d at 802. Because Alberty has failed to show that the Government's discretion was not susceptible to policy analysis, the discretionary-function exception bars his claim.

## III.

For the foregoing reasons, we affirm the district court's dismissal for lack of subject-matter jurisdiction.[5]

––––––––––––––––––––––––––––––

---

[5]We note that neither the district court's order nor judgment stated that the dismissal was without prejudice. Because this dismissal was not an adjudication on the merits, we clarify that it is without prejudice. *See* Fed. R. Civ. P. 41(b); *Hart v. United States*, 630 F.3d 1085, 1091 (8th Cir. 2011).